EDWARD R. FOREMAN, Respondent, *v.* THE UNION AND ADVERTISER COMPANY, Appellant.

*Perjury — board of civil service examiners appointed under chapter* 354 *of the Laws of* 1883, *as amended by chapter* 410 *of the Laws of* 1884 — *promulgation of rules thereby under section* 843 *of the Code of Civil Procedure.*

The board of civil service examiners appointed by the mayor of a city to examine candidates for municipal offices, under the provisions of chapter 354 of the Laws of 1883, as amended by chapter 410 of, the Laws of 1884, is empowered, under the provisions of section 843 of the Code of Civil Procedure, to promulgate rules requiring the verification of all applications for office, and the oath attached to such application by the applicant is not extra judicial and if false justifies a conviction of perjury.

APPEAL by the defendant, The Union and Advertiser Company, from a judgment of the Supreme Court in. favor of the plaintiff, entered in the office of the clerk of the county of Monroe on the 2d day of March, 1894, upon the verdict of a jury rendered after a trial at the Monroe Circuit, and also from an order entered in said clerk's office on the 29th day of March, 1894, denying the defendant's motion for a new trial made upon the minutes.

*Nathaniel Foote,* for the appellant.

*Eugene Van Voorhis,* for the respondent.

LEWIS, J. :

The defendant is a corporation and is the publisher of a newspaper in the city of Rochester, known as the *Union and Advertiser.* This action was brought against the defendant to recover damages for publishing an alleged libelous article of and concerning the plaintiff.

The mayor of the city of Rochester, after the passage of chapter 354 of the Laws of 1883, entitled "An act to regulate and improve the civil service of the State of New. York," as amended by chapter 410 of the Laws of 1884, appointed a board of examiners of applicants for admission into the civil service of the city, and he promulgated rules and regulations for the government of such examinations, with a view of ascertaining the fitness and qualifications

of applicants for admission into such service. The plaintiff was an applicant for the position of investigating clerk in the city attorney's department of said city. The position was one coming within the civil service rules, and, with the view of being permitted to take such examination, the plaintiff made a written application to the said board in the form and manner prescribed in such cases, which he duly verified before a commissioner of deeds of said city. He, among other things, stated in the application that he resided in the city of Rochester, and had resided in that city continuously for over four years, and that he had never been arrested upon a criminal charge. He was examined by the board and was duly certified to be qualified to enter the service, and he was thereafter appointed to the position of investigating clerk.

A reporter upon the defendant's paper, after making a careful examination as to the truthfulness of the statements in plaintiff's application, and being satisfied that they were untrue, prepared the article in question, and it was published by the defendant. The article was headed: "Foreman in Lima — An unenviable record in his native town — Affidavits by the town officials — The perjury before the civil service examiners — Still retained in the city's law department, although not eligible." The article goes on to give a copy of the plaintiff's verified application, and also what purported to be copies of a number of affidavits made by residents of the village of Lima, tending to show that the plaintiff had been a resident of that village during most of the year prior to his making the application, and then charges that statements in the application were false, and that "The grand jury also can scarcely avoid giving the matter its consideration," and adds: "Affidavits establishing a second falsehood in the sworn application to the civil service examiners may be produced, if necessary, as readily as those given above."

This action was thereupon commenced. It was alleged in the complaint that the defendant intended, by the article, to charge the plaintiff with the crime of perjury, fraud, and other crimes and offenses in his application.

The defendant interposed an answer, setting up the truth of the article in justification of the publication, and alleging that it was not true that the plaintiff had resided in the city of Rochester continually for over four years, and that it was not true that he had never

been arrested upon a criminal charge, and charged that he had theretofore been arrested upon a criminal charge, tried and convicted, and that the allegations in the application to the contrary were false, and known to the plaintiff to be false at the time they were made; and for a further defense, and in mitigation of any damage, it was alleged that the publication was made in good faith and without malice, and in the public interest, and in the belief on the part of the defendant and publishers that the same was true, and that they had reasonable and probable cause for believing the same to be true.

There was evidence tending to show that the application of the plaintiff in the respects mentioned was untrue, and known to him to be false at the time it was made. The trial court held that there was no provision in the Civil Service Law authorizing the mayor to make rules requiring that such applications should be verified; that the plaintiff's oath was, therefore, extra judicial, and that hence the charge of perjury could not be predicated upon it, and that the only question for the consideration of the jury was one of damages. The correctness of this ruling was duly challenged by a proper exception, and presents the important question in the case.

The article, in effect, charged the plaintiff with having committed the crime of perjury in verifying the application. If neither the mayor nor the board of examiners had the power to require that the application should be verified, then the oath was extra judicial, and a charge of perjury would not be predicated upon it.

By section 8 of chapter 410 of the Laws of 1884 it is provided that " The mayor of each city in this State is authorized and is hereby directed to prescribe such regulations for the admission of persons into the civil service of such city as may best promote the efficiency thereof and ascertain the fitness of candidates in respect to character, knowledge and ability for the branch of the service into which they seek to enter, and for this purpose he shall, from time to time, employ suitable persons to conduct such inquiries and make examinations, and shall prescribe their duties and establish regulations for the conduct of persons who may receive appointments in the said service."

After the passage of the acts referred to, the mayor of the city of Rochester prescribed certain rules and regulations for the admission of persons in the public service of the city; among other things the regulations required that the application for a position like the

one sought for by the plaintiff should be in writing and should be duly verified by the oath of the applicant, addressed to the examining board. As stated, the act does not in terms provide that the civil service board or the mayor may examine the applicants upon oath, neither does it in terms empower the mayor to make it a condition of the examination that the written application papers shall be sworn to. It does, however, require the mayor of each city to prescribe proper rules and regulations for the government of such examinations, with a view of promoting the efficiency of the civil service and ascertaining the fitness of such candidates with respect to character, knowledge and ability for the service which they seek to enter. It is the contention of the appellant that the power so conferred upon the mayor was sufficient to authorize him to require that such applications be made under oath. It is important that the examining boards should be informed as to moral character as well as the intellectual qualifications of candidates for positions in the civil service of their cities. It would probably aid them in arriving at the facts as to the character of the applicants, if they would be subjected to the ordeal of a verification of their written applications by their oaths.

Section 96 of the Penal Code provides that "A person who swears * * * that any * * * declaration, * * * certificate, affidavit, or other writing by him subscribed is true, * * * upon any hearing or inquiry, or on any occasion where an oath is required by law, or is necessary * * * for the ends of public justice, * * * and who, * * * on such hearing, inquiry or other occasion willfully and knowingly testifies, declares, deposes or certifies falsely in any material matter, or states in his testimony, declaration, deposition, affidavit or certificate, any material matter to be true which he knows to be false, is guilty of perjury." If this section does not reach the case, does section 843 of the Code of Civil Procedure, which is as follows: "Where an officer, person, board or committee has been heretofore, or is hereafter authorized by law to take or hear testimony, or to hear or receive an affidavit, or to take a deposition in relation to a matter concerning which he or it has a duty to perform, the officer, or person, or a member of the board or committee may administer an oath for that purpose. Where an officer, person, board or committee to whom, or to which

application is made to do an act in an official capacity requires information or proof to enable him or it to decide upon the propriety of doing the act, he or it may receive an affidavit for that purpose."

The examiners were a board to whom the plaintiff made application to do an official act. It was necessary that they should have information as to plaintiff's character to enable them to decide upon the propriety of certifying him to be eligible to enter the civil service of the city. The rules and regulations promulgated by the mayor required the application to be made under oath; we assume that if the plaintiff had presented an unverified application he would not have been permitted by the board to be examined.

He presented a sworn application which the board received and acted upon. We incline to the opinion that the board of examiners was empowered, by the latter clause of the section last quoted, to require, as a condition of the plaintiff's taking the examination, that he should verify his application under oath, and if so the oath was not extra judicial. The evidence tending to prove the truth of the allegations of the answer should have been submitted to the jury.

The plaintiff's verdict was for $1,750; the defendant's counsel contends that it was, in any event, excessive and should be set aside for that reason. It was, in view of all the facts, a large verdict, but not so excessive as to justify us in setting it aside for that reason.

We put our decision upon the ground of the error in excluding from the consideration of the jury the defense of justification.

The judgment and order appealed from should be reversed and a new trial granted, with costs to abide the event.

DWIGHT, P. J., HAIGHT and BRADLEY, JJ., concurred.

Judgment and order appealed from reversed and new trial granted, with costs to abide the event.