THE PEOPLE *ex rel.* Akin, Attorney General,

*v.*

## WILLIAM LOEFFLER.

*Opinion filed October 24, 1898.*

1. CIVIL SERVICE—*the Civil Service act impliedly repeals section 22 of article 7 of the City and Village act.* Upon the ground of inconsistency between them, the Civil Service act repeals by implication section 22 of article 7 of the City and Village act, which authorizes the city clerk and the collector to severally appoint such various clerks and subordinates in their offices as the city council may authorize.

2. SAME—*Civil Service act merely limits power of clerk and collector to make appointments.* The Civil Service act does not wholly take from the city clerk and the collector the power of appointing clerks and subordinates, but qualifies such power by requiring appointments to be made from those persons who have been ascertained to be competent by a civil service examination.

3. SAME—*Civil Service act applies to subordinates in offices of clerk and collector.* The Civil Service act applies to the clerks and subordinates in the offices of the city clerk and city collector, and appointments to those positions must conform to provisions of that act.

4. SAME—*civil service examination is not a "test" prohibited by the constitution.* The examination provided for in the Civil Service act is not such a "test" as is mentioned in section 25 of article 5 of the constitution, relating to oaths of office, which provides that "no other oath, declaration or *test* shall be required as a qualification."

5. SAME—*Civil Service act does not violate section 13 of article 4 of the constitution.* The Civil Service act does not, as an alleged amendment to the general Incorporation act of 1872, violate that part of section 13 of article 4 of the constitution providing that "no law shall be revived or amended by reference to its title only, but the law revived or the section amended shall be inserted at length in the new act," as the Civil Service act is complete in itself, and therefore not within the mischief to be remedied by such provision.

6. SAME—*constitutional provision defining the term "office" construed as referring to State offices.* Section 24 of article 5 of the constitution, providing that "an office is a public position created by the constitution or law, continuing during the pleasure of the appointing power, or for a fixed time, with a successor elected or appointed," has reference, in so far as it operates as a restriction upon the mode of appointment to office, to State offices only.

7. SAME—*an office created by statute is wholly under legislative control.* An office created by a statute is wholly within the control of the legislature, and, unless forbidden by the constitution, the length of

the term and the mode of appointment may be altered by the legislature at pleasure, or the office may be abolished and the incumbent be thereby deprived of its emoluments.

8. SAME—*Civil Service act does not abridge "privileges and immunities" guaranteed by the Federal constitution.* The right of subordinate employees of a municipal government as to holding office, and the right of municipal officers as to the power of appointing their subordinates or employees, do not come within the meaning of the words "privileges and immunities of citizens of the United States," as used in the fourteenth amendment of the Federal constitution.

9. The court holds that the classification made by the civil service commissioners satisfies the requirements of the Civil Service act, and includes the clerkships and subordinate positions in the offices of the city clerk and city collector of the city of Chicago in its classified service.

ORIGINAL petition for *mandamus.*

This is an original petition for *mandamus,* filed in this court by the People on the relation of the Attorney General against William Loeffler, city clerk of the city of Chicago, alleging that the city clerk has neglected to notify the civil service commissioners of vacancies in the positions or places of certain clerks and other employes and subordinates in his office, and to make requisitions on said commissioners for the names of persons to fill such vacancies, as required by the Civil Service law and the rules made in pursuance thereof; that the city clerk claims that such places and positions where vacancies have occurred, and the other places and positions in his office, are not within the scope and meaning of the Civil Service act, and that he has the sole power and authority to fill all vacancies in said places and positions, and to determine what persons shall be appointed to fill said positions and vacancies, and to select such persons without complying with the Civil Service law in force in the city of Chicago; that in violation of the Civil Service act he has assumed to fill some of the vacancies by appointing persons not on the eligible lists prepared by said commissioners, and not designated or certified by them for appointment or pro-

motion; that he has attempted to appoint one Nathan Aronson and one Philip Klein as clerks in his office, neither of whom has been examined or certified, or is on any eligible list or register, or otherwise entitled to such appointment; that the said offices and places under said city clerk are within the classified service of said city. The petition further alleges, that the respondent, the city clerk aforesaid, in April, 1897, made requisitions on the civil service commissioners for the names of certain persons to be appointed or employed by him as clerks and other employes and subordinates in his office, and to fill vacancies therein; that, having been informed by said commissioners in each of said cases that there were no eligibles with whom to fill said vacancies, and having been authorized by said commission to make temporary appointments under said act and rules, he appointed and employed certain persons to fill said places and positions or vacancies; that sixty days have long since expired since said appointments, and that regular appointments can be made under said act; that said commissioners have had, during the last ten months, lists and registers of persons, who have passed the examinations as candidates for certain positions or vacancies, from which said commission could and would certify the names of persons to fill the same if notified thereof, or called upon to make such certifications; that no requisition has been made to them to fill said vacancies since April, 1897, and no certification of the persons so appointed by the city clerk has been made by the commission to fill the same; but that said commissioners have certified the names of persons as required by the act to said city clerk for appointment to several of said places who were not accepted or appointed by him; that he has made no report of the same as required by the rules; and that said places are occupied by parties appointed contrary to the act and rules; that said city clerk threatens to, and will appoint, clerks and other employes and subordinates without reference to the regis-

ters or lists of positions or places prepared by the civil service commission, and without making requisitions upon the commission for the names of eligible candidates for such positions.

The petitioner prays, that a writ of *mandamus* may issue to the clerk, directing him to notify the civil service commission of the city of Chicago of all vacancies existing, or which at any time shall exist in places, positions or offices of deputy city clerk, clerks, or other employes or subordinates in his office, and to make requisitions upon the civil service commission of said city for certifications of persons to fill such positions (including vacancies), etc.; and directing him to appoint to such offices, positions of employment, and to vacancies therein, only such persons as shall be certified to him by such civil service commissioners; and to make no appointment except under and according to the provisions of the Civil Service act and the rules of said commissioners, etc.

An answer has been filed by the city clerk to the petition for *mandamus,* and a replication has been filed to said answer by the petitioner. The answer sets up matters of fact and matters of law in defense. The nature of these defenses appears in the opinion of the court.

EDWARD C. AKIN, Attorney General, (JOHN W. ELA, NEWTON A. PARTRIDGE, and EDWIN BURRITT SMITH, of counsel,) for petitioner:

There is nothing in section 22 of article 7 of the City and Village act which conflicts with the Civil Service act. If that section does conflict, it is repealed by the Civil Service act. Sutherland on Stat. Const. sec. 147, and cases cited; *State* v. *Kelly,* 34 N. J. L. 75.

There was no intention of the legislature to exempt the positions mentioned in said section 22. Sedgwick on Const. of Stat. (2d ed.) 208, and cases cited.

The last clause of section 12 of the Civil Service act shows that places covered by said section 22 are covered

by the Civil Service act.    All the other officers of the city are authorized by law to appoint their subordinates substantially the same as those in said section 22.

The Civil Service act does not conflict with the constitution of Illinois.    *People* v. *Kipley*, 171 Ill. 44; *Potwin* v. *Johnson*, 108 id. 70; *People* v. *Hazelwood*, 116 id. 319; *People* v. *Blue Mountain Joe*, 129 id. 370; *People* v. *Nelson*, 133 id. 565; *McGurn* v. *Board of Education*, 133 id. 122; *Hutchinson* v. *Self*, 153 Ill. 542; *Ritchie* v. *People*, 155 id. 98; *Mahomet* v. *Quackenbush*, 117 U. S. 508.

The Civil Service act does not conflict with the constitution of the United States.    *People* v. *Kipley*, 171 Ill. 44; *Butler* v. *Pennsylvania*, 10 How. 402; *Dartmouth College* v. *Woodward*, 4 Wheat. 518; *Brown* v. *Commissioners*, 166 Mass. 14; *Newton* v. *Commissioners*, 100 U. S. 548; *Ex parte Curtis*, 106 id. 37; *Crenshaw* v. *United States*, 134 id. 99; *People* v. *Morgan*, 90 Ill. 558; Cooley's Const. Lim. 331, 489.

CHARLES S. THORNTON, for respondent:

Tenure of every civil office in this State is unalterably fixed by the constitution.    It must continue during the pleasure of the appointing power or for a fixed time. Const. 1870, art. 5, sec. 24.

Any right defined by the constitution is in the nature of a constitutional grant, and cannot be taken away by any authority known to the government.    It involves a prohibition against interference with it.    *Commonwealth* v. *Gamble*, 62 Pa. St. 348; *Commonwealth* v. *Mann*, 5 W. & S. 403; *People* v. *Dubois*, 23 Ill. 547.

The general principles governing the construction of constitutions are the same as those that apply to statutes.    6 Am. & Eng. Ency. of Law, (2d ed.) 921.

Whenever a statute in express terms gives a discretionary power to any person, to be exercised by him upon his own pleasure, he is thus made the sole and exclusive judge as to the propriety of its exercise, and in such case his will or private opinion must stand in place of any

reason. Such a power is not to be construed as a judicial discretion, to be regulated according to the known rules of law. *People* v. *Mayor*, 82 N.Y. 491; *Territory* v. *Cox*, 6 Dak. 501; *Williams* v. *Gloucester*, 148 Mass. 256; *People* v. *Whitlock*, 92 N. Y. 191; *Weidmann* v. *Board of Education*, 26 id. 765; *State* v. *Stevens*, 46 N. J. L. 344; *Field* v. *Girard College*, 54 Pa. St. 233; *Commonwealth* v. *Sutherland*, 3 S. & R. 145; *State* v. *McGarry*, 21 Wis. 496.

Our constitution gives to every office which is not for a fixed time, tenure "during the pleasure of the appointing power." Section 12 of the Civil Service act, upon which appellee's counsel relies, prescribes that "no officer or employee in the classified civil service of any city, who shall have been appointed under said rules and after said examination, shall be removed or discharged except for cause, upon written charges after an opportunity to be heard in his own defense." This section is in direct conflict with both the letter and spirit of the constitution.

The tests required by section 6 of the Civil Service act are in express terms absolutely prohibited by section 25 of article 5 of the constitution, which prescribes the oath of fealty, loyalty and fidelity, adding these thirteen words: "And no other oath, declaration or test shall be required as a qualification."

TENNEY, McCONNELL, COFFEEN & HARDING, also for respondent:

The Civil Service act did not work a repeal of that part of the general Incorporation act which gave to the comptroller, the collector and clerk the right to appoint their own subordinates.

Neither statute nor ordinance provides for offices or places of appointment under the comptroller, collector or clerk, except as section 22 of article 7 of the general Incorporation act does so. The older statute (the Incorporation act) will remain in force unless utterly irreconcilable with the later law, even though the later enact-

ment has in it a clause providing for the repeal of all laws in conflict with it. *Wood* v. *United States*, 16 Pet. 342; *Davis* v. *Fairbairn*, 3 How. 636; *United States* v. *Tynen*, 11 Wall. 88; *State* v. *Stoll*, 17 id. 425; *Fitzgerald* v. *Champenys*, 30 L. J. Eq. 782; *Thorpe* v. *Adams*, L. R. 6 C. P. 135.

There are several reasons why the Civil Service act is not inconsistent with the section of the Incorporation act giving the power of appointment of subordinates to the comptroller, clerk and collector: First, the Civil Service act does not affect any officers subject to the confirmation of the city council; second, the Civil Service act does not apply to mere assistants to the officer elected by the people, unless they are officers or occupants of places created by statute or ordinance; third, it was not intended by the Civil Service act to make permanent merely temporary employments, and it is clear that to have done so would make the municipal government more expensive. A general act is not to be construed to repeal a previous particular act, unless there is some express reference to the previous legislation on the subject, or unless there is a necessary inconsistency in the two acts standing together. *Thorpe* v. *Adams*, L. R. 6 C. P. 135.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

*First*—It is claimed by the respondent, that the Civil Service act has no application to the various clerks and subordinates in the office of the city clerk of Chicago; that the clerks and subordinates in that office can be appointed by the city clerk himself without reference to the requirements of the Civil Service act. This contention is based upon section 22 of article 7 of the City and Village act. That section is as follows: "The comptroller (if there shall be one), the clerk, treasurer and collector, shall, severally, appoint such various clerks and subordinates in their respective offices as the city council or

board of trustees may authorize, and shall be held, severally, responsible for the fidelity of all persons so appointed by them." (1 Starr & Curt. Ann. Stat.—2d ed.—p. 732). It is claimed on the part of the respondent, that section 22 is still in force, and was not repealed by the Civil Service act passed in 1895.

It may be said that, in a certain sense, the power to appoint these clerks and subordinates still remains with the city clerk. The Civil Service act does not take away the power of appointment absolutely, but qualifies such power by requiring appointments to be made from persons who have been ascertained to be competent by examinations under the Civil Service act. Under the provisions of the Civil Service act the city clerk still appoints his clerks and subordinates, and, as the power of appointment thus remains with him, it cannot be said that it has been altogether taken from him by the Civil Service act, even if that act applies to positions in his office. Neither the city clerk, nor any other public officer, should appoint men to subordinate positions in his office, unless they are qualified to perform the duties of such positions. The Civil Service act merely substitutes the results of the examinations required by such act for the uncontrolled will of the appointing officer in the matter of selecting those, who are to perform the required duties. We are of the opinion, that the Civil Service act applies to the clerks and subordinates in the office of the city clerk, because section 22, above referred to, has been repealed by that act, so far as the mode of selecting appointees is concerned.

The provisions of the Civil Service act are in conflict with section 22 of article 7 of the City and Village act. Under section 22 the city clerk had the power to appoint his employes, and such appointments were during his pleasure. But the Civil Service act establishes a new system, by which all city employes are to be selected on account of their fitness and merit, as ascertained by examinations held under and in pursuance of the law.

The act, which requires appointments thus to be made, is necessarily in conflict with an act, which left such appointments to the uncontrolled will and discretion of the appointing power. It is true, that there is no express repeal in the Civil Service act of said section 22. It is also true, that repeals by implication are not favored. But the Civil Service act is subsequent in date, by a period of more than twenty years, to the City and Village act; and, where there is an irreconcilable inconsistency between an older act and a later act, it will be presumed that the legislature intended by the latter to repeal the former. A subsequent statute, which revises the whole subject of a former one and is intended as a substitute for it, operates as a repeal of the former, although there are no express words of repeal. The object of section 22, above referred to, was to designate a particular mode for the appointment of the employes of the city comptroller, city clerk, city treasurer and city collector. That mode may be termed the pleasure of the appointing power. The object of the Civil Service act is to designate another and different mode of appointing such employes, and that mode is fitness and merit, as ascertained by free and public and competitive examinations. Where, by the language used in a statute, a thing is limited to be done in a particular manner, "it includes a negative that it shall not be done otherwise." Where the appointments to all subordinate positions under the city government are required by an affirmative enactment to be made upon the basis of merit and fitness as ascertained by examinations, there is necessarily included in such enactment a prohibition against appointments made at the will of the appointing power. The two methods of appointment thus indicated are so inconsistent with each other, that section 22 and the Civil Service act, considered with reference to the positions therein named, cannot stand together; and, therefore, the repeal of section 22 is inferred from necessity. Section 37 of the Civil Service act provides that:

"All laws or parts of laws which are inconsistent with this act, or any of the provisions thereof, are hereby repealed." (Laws of Ill. 1895, p. 94). The insertion of this provision in the Civil Service act assumes, that the new rule as to appointments is to some extent repugnant to some law enacted before the Civil Service act. Of course, there must be repugnancy between an older and a later act in order to make the latter operate as a repeal of the former, whether such a provision as section 37 is inserted in the later act or not. But, where such a provision as section 37 is inserted in a subsequent law, courts are less inclined against recognizing repugnancy between such subsequent law and another prior law upon the same subject. The principles thus announced are sustained by the following authorities: *People* v. *Nelson*, 156 Ill. 364; Sutherland on Stat. Const. secs. 137, 138, 140, 143, 146, 147.

That there is such repugnancy, as is above referred to, between said section 22 and the provisions of the Civil Service act will appear from an examination of the law. Section 3 of the Civil Service act provides that: "Said commissioners shall classify all the offices and places of employment in such city, with reference to the examinations hereinafter provided for, except those offices and places mentioned in section 11 of this act." The city comptroller, the city clerk, the city treasurer and the city collector are city officials and a part of the city government. Therefore, the subordinate positions and places of employment under these officials come under the designation of "offices and places of employment in such city." All the offices and places of employment in such cities, and not a part of them, except those mentioned in section 11, are to be classified under the Civil Service act. It necessarily follows, that the subordinate places under the city clerk fall among the places of employment which are subject to classification. By the terms of section 11, the four officials named in section 22 are not included in the classified service, but the exceptions mentioned in

section 11 do not include clerks and subordinates in the offices named in section 22. It is difficult to see how an act, which provides that all offices and places of employment in the city, except those named in section 11, shall be classified by the civil service commissioners, can be consistent with section 22 of the City and Village act, which provides, in substance, that the clerks and subordinates of four particular city officials shall be appointed in a different mode from that contemplated by such classification. A subsequent law, which states that all of certain offices and places shall be classified, is certainly inconsistent with a prior law, which provides for appointments to a few of such offices and places without mentioning classification. It being true that all city offices and places of employment are subject to classification, and it being also true that the clerks and subordinates under the four officials named in section 22 hold city offices and places of employment, it necessarily follows that the latter are subject to classification under the Civil Service act.

Section 3 further provides that: "The offices and places so classified by the commission shall constitute the classified civil service of such city, and no appointments to any of such offices or places shall be made except under and according to the rules hereinafter mentioned." If no appointments to any of such offices or places shall be made except under and according to the civil services rules, and if the positions under the four officials named in section 22 are included in such offices or places, then the prohibition against any appointments being made, except under and according to such rules, applies to the subordinates and clerks mentioned in section 22, as well as to all other clerks and subordinates in the city departments.

Again, section 29 of the Civil Service act provides: "No accounting or auditing officer shall allow the claim of any public officer for services of any deputy or other

person employed in the public service in violation of the provisions of this act." The officers named in section 22 of the City and Village act are public officers of the city, and, therefore, the prohibition against the allowance of the claim of any public officer for services of any deputy, or other person employed in the public service, applies, as a matter of course, to the clerks and subordinates under said four officials.

Section 31 provides: "No comptroller or other auditing officer of a city, which has adopted this act, shall approve the payment of, or be in any manner concerned in paying any salary or wages to any person for services as an officer or employe of such city, unless such person is occupying an office or place of employment according to the provisions of law, and is entitled to payment therefor." Section 32 also provides: "No paymaster, treasurer, or other officer or agent of a city, which has adopted this act, shall willfully pay, or be in any manner concerned in paying any person any salary or wages for services as an officer or employe of such city, unless such person is occupying an office or place of employment according to the provisions of law, and is entitled to payment therefor." The expression in sections 31 and 32, "according to the provisions of law," does not refer to any law generally, but refers to the provisions of the Civil Service act. An examination of these sections in connection with the rest of the act can lead to no other conclusion. "Statutes must be so interpreted as to give effect to every part thereof and leave each part some office to perform; and any construction, which deprives any part of a statute of effect and meaning, when it is susceptible of another interpretation, is held without support of any authority." (*People* v. *Angle*, 109 N. Y. 564; *Wilcox* v. *People*, 90 Ill. 186; *Hayes* v. *O'Brien*, 149 id. 403). If, under section 29, no claim for services of any deputy or other person employed in the public service can be allowed in violation of the Civil Service act, then the payment of such claim is equally

forbidden.   It is absurd to say that a claim shall not be allowed, and, at the same time, to say that the payment of such claim may be made.   The prohibition contained in sections 31 and 32 must be read in connection with the prohibition contained in section 29.   The prohibition against a payment, or the approval of a payment to an 'employe in the public service, unless such person is occupying his office or place according to "the provisions of law," is wholly unnecessary unless the word "law" refers to the Civil Service act.   His office or place in the public service could not exist, unless there was some law providing for it.   Therefore, to give to sections 31 and 32 such a meaning as is consistent with the other provisions of the act, the persons, to whom payment is therein denied, must be persons not occupying their offices or places according to the provisions of the Civil Service act, and who are not entitled to payment for their services under that law.   This being so, sections 31 and 32 refer to the clerks and subordinates in the employment of the city clerk, comptroller, collector and treasurer, as well as to all other city clerks and employes.   It is unnecessary to continue the examination of the Civil Service act, as what has already been said sufficiently indicates, that the provisions of that act were intended to supplant and be substituted for section 22 of the City and Village act.

Section 12, which has reference to the removal or discharge of officers or employes in the classified service of any city, closes with these words:  "Nothing in this section shall be construed to require such charges or investigation in cases of laborers or persons having the custody of public money, for the safe keeping of which another person has given bonds."   It seems to be contended by the respondent, that, in view of the language thus quoted from section 12, the legislature intended that the clerks and subordinates named in section 22 of the City and Village act should not be covered by the Civil Service act. But it is clear, that the words thus quoted from section 12

refer to removals or discharges, and not to appointments. Appointing officers are thereby allowed greater freedom as to the removal of subordinates and clerks, but their appointment is not thereby affected. While an appointing officer may have the right to discharge such persons as are above named, yet, when the vacancy is made by a discharge, it must be filled with a person who has been examined under the provisions of the act. The words quoted directly recognize the fact that those persons in the service of the city who have the custody of public money are included in the provisions of the act. If they were not to be included in the classified service, such a provision would be unnecessary; persons not embraced within the provisions of the act can be removed without regard to any of its provisions. What persons should be embraced within the terms of the act, whether persons having the custody of public money or otherwise, is a matter of policy to be decided by the legislature.

Our conclusion upon this branch of the case is that the clerks and subordinates in the respective offices of the city clerk, comptroller, treasurer and collector are subject to classification under the Civil Service act.

*Second*—It is contended that the Civil Service act is invalid as being in conflict with the constitution of Illinois. This court held the law to be constitutional in the case of *People* v. *Kipley,* 171 Ill. 44. Many of the grounds, upon which the constitutionality of the law is here attacked, are the same as those which were considered in the *Kipley case.* We have no disposition to review the conclusion there reached, and decline again to discuss the questions there settled. One or two points, however, are made by counsel which were not suggested to the court in the *Kipley case,* and these will be briefly discussed.

In the first place, it is said that the act is unconstitutional, as requiring tests for appointment of applicants to positions in the public service which are prohibited by the constitution. The constitutional provision, which is

thus alleged to be violated, is section 25 of article 5, which provides that all civil officers, except members of the General Assembly and such inferior officers as may be by law exempted, shall, before they enter upon the duties of their respective offices, take and subscribe an oath, which is set forth in said section, which section contains these words: "And no other oath, declaration or test shall be required as a qualification." The meaning of the word "test" as here used was considered in *People* v. *Hoffman*, 116 Ill. 587. The meaning of the word is also discussed in *Rogers* v. *Common Council of Buffalo*, 123 N. Y. 173. The examinations provided for in the Civil Service act are not such tests, as are contemplated by the constitutional provision here referred to. Upon this subject we content ourselves with quoting what is said in *Rogers* v. *Common Council of Buffalo*, *supra:* "In this case we simply hold, that the imposing of a test by means of which to secure the qualifications of a candidate for an appointive office, of a nature to enable him to properly and intelligently perform the duties of such office, violates no provision of our constitution."

In the second place, it is said that the Civil Service act is an amendment of the general Incorporation act of 1872, and, as such, is in violation of that part of section 13 of article 4 of the constitution which reads as follows: "No law shall be revived or amended by reference to its title only, but the law revived or the section amended shall be inserted at length in the new act." The contention of counsel for the respondent is, as we understand such contention, that all the sections of the Incorporation act of 1872, here alleged to have been amended, should have been repeated as required by section 13. The contention thus made is without force. The mischief intended to be remedied by the provision of the constitution above quoted is that of the amendment of statutes by reference to their titles only, where the amendment in many cases cannot be understood without looking into the section

amended. But, where a new act on a subject is complete in itself and entirely intelligible, showing upon its face just what it is, and where its enactment has no reference to any prior law, it will not contravene any constitutional provision. An act complete in itself is not within the mischief designed to be remedied by the provision in question. (*People* v. *Wright*, 70 Ill. 388; *Timm* v. *Harrison*, 109 id. 593; *English* v. *City of Danville*, 150 id. 92). The Civil Service act is complete in itself, and shows just what it is, so that in its enactment there is no contravention of the constitutional provision named.

In the third place, the act is said to be unconstitutional upon the alleged ground, that it is in violation of section 24 of article 5 of the constitution. Said section 24 is as follows: "An office is a public position, created by the constitution or law, continuing during the pleasure of the appointing power, or for a fixed time, with a successor elected or appointed. An employment is an agency, for a temporary purpose, which ceases when that purpose is accomplished." The position taken by counsel is, that, under our constitution, there can be no office, unless the appointee holds the same during the pleasure of the appointing power, or unless the appointee holds the same for a definite and fixed term of years. It is argued that, under the Civil Service Act, offices may be held during good behavior, or until removal or discharge for cause, and that such a tenure of office is not recognized in our constitution. Counsel take the ground that, in view of the definition of "office" contained in section 24, no office in this State, State or municipal, can be held during good behavior or until discharge or removal for cause, but must be held, either during the pleasure of the appointing power, or for a definite period of time. The Civil Service act has to do particularly with subordinate places of employment in the public service. It also concerns only the public service in cities, towns and villages, and has no reference to the public service of the State at

large. It particularly exempts from the classified service in cities elective officers and heads of the principal departments of the city. In a certain sense, therefore, the positions, to which the Civil Service act has reference in the city government, are places of employment rather than offices in the strict meaning of the latter term.

Independently, however, of this consideration, the definition of "office," as contained in section 24, refers only to offices under the State government. This will be manifest from a consideration of all the sections of article 5 of the constitution, which is entitled "Executive Department." Constitutions, as well as statutes, are not to be interpreted according to the words used in particular clauses, but the whole instrument must be considered with a view to ascertain the sense in which the words are employed. (*Wilcox* v. *People*, 90 Ill. 186). Section 10 of article 5 provides that: "The Governor shall nominate, and by and with the advice and consent of the Senate (a majority of all the Senators selected concurring, by yeas and nays), appoint all officers whose offices are established by this constitution, or which may be created by law, and whose appointment or election is not otherwise provided for; and no such officer shall be appointed or elected by the General Assembly." In *People* v. *Morgan*, 90 Ill. 558, we held, that section 10 referred to officers or persons performing duties for the State as contradistinguished from county, city, township or other municipal officers. It cannot be doubted, that the words "office" and "officer," as used in all the subsequent sections of article 5, refer to State officers. Section 23, immediately preceding section 24 containing the definition of office, contains these words: "And all fees that may hereafter be payable by law for any services performed by any officer provided for in this article of the constitution, shall be paid in advance into the State treasury." The requirement, that the fees shall be paid into the State treasury, amounts to a description of all the officers referred to in article 5 as

officers of the State government, and not of county or municipal governments. In *People* v. *Morgan, supra,* we said (p. 566): "When the General Assembly creates a body of that character (a municipal government), it has the power to provide the manner of filling the offices for its government. The constitution having prescribed no particular mode, that body is left to select any means for the administration of government it thinks best adapted to that end. It may provide for election by the people, or may authorize any officer or person to fill the offices by appointment. That power has not been placed beyond legislative domain." Inasmuch as the definition of "office" in section 24 refers to State and not to municipal officers, there is no provision in the constitution prescribing any particular mode for the appointment of officers in municipal corporations. The legislature, therefore, may provide for the appointment of officers in the municipal government in the mode adopted by the Civil Service act. In the absence of any constitutional restriction, the power of the legislature is ample to provide the mode of appointment to be adopted in selecting municipal officers.

It is true, that the definition given of an office in section 24 of the constitution may in some cases apply to an officer of a county or city or other municipality. The offices of city clerk, city treasurer and city collector come within the definition laid down in said section 24. (*Wilcox* v. *People, supra; City of Chicago* v. *McCoy,* 136 Ill. 344). But, so far as the definition given in section 24 operates as a restriction upon the mode of appointment to office, it has reference only to State officers.

We are, however, of the opinion that the definition of "office," as given in section 24, does not admit of the construction put upon it by the counsel for respondent. In section 24 an "office" is considered as the antithesis of a mere employment. The first sentence of the section states what an office is, while the second sentence refers to an employment as a mere agency. The words of section 24

were evidently inserted in the constitution of 1870 because of the decision of this court in *Bunn* v. *People,* 45 Ill. 397. In the *Bunn case* the legislature passed an act appointing certain persons as commissioners to superintend the erection of a new State house; and the question arose whether or not such commissioners were officers within the meaning of the constitution of 1848. It was there held, that such commissioners were not officers, but mere agents or employes for a single and specific purpose, whose functions were at an end upon the completion of their work. An office, as defined in section 24, is a public position which continues, and which does not end upon the performance of a particular duty. The words are: "continuing during the pleasure of the appointing power, or for a fixed time, with a successor elected or appointed." In other words, an office is a position, which does not end with the termination of the term of the person filling it, but its duties continue to be performed by the successor of such person, whether elected or appointed. The duties are continuing, and not temporary like those of a mere employment or agency. In section 24, appointments during the pleasure of the appointing power are also placed in antithesis to appointments for a fixed time. But the words, "fixed time," as here used, do not necessarily mean a definite period, as for instance one year, two years or three years. On the contrary, they refer to a term of office which is established or settled, as contradistinguished from a term which depends upon the mere will or pleasure of the appointing power. A man, who is appointed to hold his office during good behavior, or until removal or discharge for cause, occupies it for a settled and established term; and the time, for which he occupies it, is in a certain sense a fixed time, because it does not end at the pleasure of the appointing power. Even, therefore, if the definition in the constitution should be held to apply to offices in the municipal government, it cannot be said that appointments made under the pro-

visions of the Civil Service act are not appointments
made for a fixed time.   Every person, occupying a place
or position under the terms of the Civil Service act, is a
person whose term of office is followed by a successor.

Counsel for respondent fail to distinguish between of-
fices created by the constitution, and offices created by
statute.   It is asserted, that a right defined by the con-
stitution is in the nature of a constitutional grant and
cannot be taken away by any authority known to the
government.   It is sought to apply this principle to the
definition of an office contained in said section 24.   In
support of this position three cases are referred to, to-wit:
*Commonwealth* v. *Gamble*, 62 Pa. St. 348; *Commonwealth* v.
*Mann*, 5 W. & S. 403; *People* v. *Dubois*, 23 Ill. 547.   By ref-
erence to each of these cases, it will be seen that the of-
ficers, whose rights were therein considered, were judges
of courts, holding their office by virtue of constitutional
provisions; and, by reason of this fact, it was held that
the legislature had not the constitutional power to de-
prive a judge of his office and compensation, or to dimin-
ish his compensation during his continuance in office, or
to limit or restrict his tenure of office.   When an office is
created by a statute, it is wholly within the control of
the legislature creating it.   The length of term and mode
of appointment may be altered at pleasure, and the office
may be abolished and the compensation taken away from
the incumbent, unless forbidden by the constitution.
(*People* v. *Lippincott*, 67 Ill. 333; *Arnold* v. *Alden*, 173 id. 229;
*Crook* v. *People*, 106 id. 237).   As is well said by the learned
author of the article on Public Officers in 19 American and
English Encyclopedia of Law, (p. 416): "Where the man-
ner of filling an office is prescribed by constitution, a dif-
ferent mode cannot be provided by legislative enactment;
but if the manner of filling it is not prescribed, or if it is
not an office of constitutional origin, it is competent for
the legislature to declare the manner of filling it, either
through the agency of an election by the people, or by

appointment by such authority as it may deem just and proper, and in like manner to change from time to time the mode of election or appointment." In the absence of constitutional provision on the subject, the power of prescribing the manner of making appointments to office falls naturally and properly to the legislative department, and may be exercised by it. (19 id. pp. 421, 423, 428, 552; Cooley on Const. Lim.—6th ed.—p. 228; *Tugman* v. *City of Chicago*, 78 Ill. 405).

Under the Civil Service act, all the offices and places of employment, which are provided for, are those of cities, towns and villages and are created by statute or ordinance, and not by special constitutional provision. The mayor of a city, and the city clerk, and the other officers of a city, are not officers of the State within the meaning of the constitutional provision. The duties of State officers concern the State at large or the general public, although exercised within defined territorial limits, but the functions of municipal officers relate exclusively to the particular municipality. Although the State grants the charter, under which a city is organized and acts, yet "those elected in obedience to that charter perform strictly municipal functions, and do not act in obedience to State law in the manner enjoined upon State officers." (*Britton* v. *Steber*, 62 Mo. 370.) The City and Village act, which constitutes the charter of the city of Chicago, provides, in section 3 of article 6, that all officers of any city, except as therein otherwise provided, shall be appointed by the mayor by and with the advice and consent of the city council. The power of the mayor to appoint is thus restricted and limited by the consent and action of the common council. It is difficult to see what difference there is in principle between such a restriction upon the power of appointment vested in the mayor and the character of the restrictions imposed by the Civil Service act. In the one case, the common council must, by its official action, consent to the appointment; in the other case, the

civil service commissioners must certify to the eligibility of the applicant after examination in accordance with the provisions of the Civil Service act.

*Third*—It is next urged by counsel for respondent, that the Civil Service act is in contravention of the constitution of the United States. The principal provision of the Federal constitution, alleged to be violated by the act, is the fourteenth amendment, which is as follows: "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law, which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws." Counsel for respondent have attached to their brief, addressed to this court, a brief addressed to the Supreme Court of the United States, when it was sought to review the case of *Kipley* v. *People,* recently decided by this court and reported in 171 Ill. 44. Much of the brief addressed to the Federal court is in review of conclusions already reached by this court in the *Kipley case,* and, as presented here, amounts to nothing more than a petition for rehearing. We cannot consider an application for rehearing laid before us in this manner. With some difficulty we have endeavored to pick out the portions of the attached brief, which discuss other positions than those already decided. Most of the brief of counsel, alleging a violation of the fourteenth amendment, proceeds upon the theory that public employment is property; but, as we have already held that public office is not property, we deem it unnecessary to further consider this view of the case.

As we understand counsel, they claim that the fourteenth amendment is violated by the Civil Service act in the following respects:

*First*—It is said that the act "abridges the privileges and immunities of citizens of the United States, in that it renders all citizens who do not apply for office, or for place of employment, ineligible to appointment or for selection therefor, whereas it is the right and privilege of every citizen to hold office and serve the public."

*Second*—It is said that the Civil Service act "deprives a duly elected and qualified officer of the right to select his subordinates, and provide the requisite agencies for performing his official duties, thus abridging the rights, privileges and immunities belonging and guaranteed by said constitutions respectively to every citizen thereof."

Wherever civil service acts are in force, they provide for applications to be made by those seeking employment in the public service, and no question has ever been made that such acts violate any constitutional provision by reason of this feature. (*Opinion of Justices,* 145 Mass. 587; *Freeman* v. *Union and Advertiser Co.* 83 Hun, 385; *Brown* v. *Russell,* 166 Mass. 14; 6 Am. & Eng. Ency. of Law, —2d ed.—pp. 90-92, and cases in notes; 19 id. p. 414, and cases referred to in notes; Throop on Public Officers, , sec. 95, and cases referred to in notes). The only way, by which a citizen can manifest his desire to hold a public position which is subordinate in character, is by making application therefor. It is true, that men are sometimes called to public positions by the unsought suffrages of their fellow-citizens, or by the unsolicited selection of an appointing officer. All elective positions in municipal governments under the present act, whether conferred by election of the people or by election of the city council, are exempt from the provisions of the Civil Service act. If a citizen is called upon to serve the public in a subordinate position by any appointing officer, he undergoes no hardship by submitting to an examination which shall determine whether he is qualified for such position or not. It is a mistake to suppose that every citizen has the right

to hold office; it is only every citizen, having the proper qualifications for the office, who has the right to hold such office. The mode of determining whether such qualifications exist, as established by the Civil Service act, applies to all citizens alike, and, therefore, the rights and privileges of none in that regard are abridged.

The right of an elected and qualified officer to select his own subordinates is not a vested or private personal right. In *Butler* v. *Pennsylvania*, 10 How. 402, where the State of Pennsylvania in 1836 passed a law, declaring that canal commissioners should be appointed annually by the government, and that their term of office should commence on the first of April every year, the pay being four dollars per diem, and, afterwards in April, 1863, certain persons being then in office as commissioners, the legislature passed another law, providing among other things, that the per diem should be only three dollars, the reduction to take effect upon the passage of the law, and that in the following October commissioners should be elected by the people, and where the commissioners claimed the full amounts during the entire year, upon the ground that the State had no right to pass a law impairing the obligation of a contract, the Supreme Court of the United States held, that there was no contract between the State and the commissioners within the meaning of the constitution of the United States, and said: "The appointment to and the tenure of an office created for the public use, and the regulation of the salary affixed to such an office, do not fall within the meaning of the section of the constitution relied on by the plaintiffs in error; do not come within the import of the term 'contracts,' or, in other words, the vested private personal rights thereby intended to be protected. They are functions appropriate to that class of powers and obligations by which governments are enabled, and are called upon, to foster and promote the general good." In *Newton* v. *Board of Commissioners*, 100 U. S. 548, the Supreme Court of the United

States said: "The legislative power of a State, except so far as restrained by its own constitution, is at all times absolute with respect to all offices within its reach.. It may at pleasure create or abolish them, or modify their duties. It may also shorten or lengthen the term of service, and it may increase or diminish the salary or change the mode of compensation. The police power of the States, and that with respect to municipal corporations, and to many other things that might be named, are of the same absolute character." The Federal Supreme Court has thus recognized the power of the State to regulate and control municipal offices, and the terms and conditions upon which they may be held. (*Dartmouth College* v. *Woodward,* 4 Wheat. 518; Cooley's Const. Lim.—6th ed.— p. 331).

The first paragraph of section 2 of article 4 of the Federal constitution provides, that "the citizens of each State shall be entitled to all privileges and immunities of citizens in the several States." The fourteenth amendment provides, that "no State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States." There is a difference between the privileges and immunities belonging to the citizens of the United States as such, and those belonging to the citizens of each State as such. The privileges and immunities of the citizens of the several States are those, which concern the personal private rights of the citizen. The Supreme Court of the United States has said that "they may all * * * be comprehended under the following general heads: Protection by the government with the right to acquire and possess property of every kind, and to pursue and obtain happiness and safety, subject nevertheless to such restraint as the government may prescribe for the general good of the whole." (*Slaughter-House cases,* 16 Wall. 36). The privileges and immunities of the citizens of the several States "do not include within their meaning the right to hold

175—39

office." "They mean, that all citizens of the United States shall have the right to acquire property and hold it, and that this property shall be protected and secured by the laws of the State in the same manner as the property of the citizens of the State is protected; that this property shall not be subject to any burdens or taxes not imposed on the property of citizens of the State." (3 Am. & Eng. Ency. of Law, p. 253; *Wiley* v. *Palmer*, 14 Ala. 627; *Campbell* v. *Morris*, 3 H. & McH. 554). If, therefore, the rights and immunities, as referred to in the fourteenth amendment, are the same rights and immunities referred to in section 2 of article 4, they have no application to the questions now under consideration, as they do not include the right to hold office.

It has, however, been held that "the privileges and immunities of citizens of the United States" are those which arise out of the nature and essential character of the national government, the provisions of its constitutions or its laws and treaties made in pursuance thereof; and that it is these rights, which are placed under the protection of Congress by this clause of the fourteenth amendment. (*Slaughter-House cases*, 16 Wall. 36). The doctrine has been otherwise expressed thus: "Whatever one may claim as of right under the constitution and laws of the United States by virtue of his citizenship, is a privilege of a citizen of the United States. Whatever the constitution and laws of the United States entitle him to exemption from, he may claim an immunity in respect to. * * * And such a right or privilege is abridged whenever the State law interferes with any legitimate operation of the Federal authority which concerns his interest, whether it be an authority actively exerted, or resting only in the express or implied command or assurance of the Federal constitution or laws." (Cooley's Const. Lim. —6th ed.—p. 489, note 3; *United States* v. *Reese*, 92 U. S. 214; *United States* v. *Cruikshank*, id. 542; *Hall* v. *DeCuir*, 95 id. 485; *Kirkland* v. *Hotchkiss*, 100 id. 491; *Ex parte Virginia*, id. 339;

*Meriwether* v. *Garrett*, 102 id. 472; *Minor* v. *Happersett*, 21
Wall. 162). Under the definition of privileges and immu-
nities, as applied to citizens of the United States, the
fourteenth amendment can have no application to the
questions here involved. The rights of the subordinate
employes in a municipal government as to the holding of
office, and the rights of municipal officers as to the power
of appointing their subordinates or employes, do not come
within the meaning of "privileges and immunities of citi-
zens of the United States," as those words are used in the
fourteenth amendment of the Federal constitution.

It is furthermore claimed, that the Civil Service act
denies to the citizens the freedom of political action, and
makes it highly penal for them to take part in politics.
This contention has reference to sections 21 to 28 inclu-
sive of the Civil Service act. The design of these sections
is to prevent the solicitation of political contributions,
and the levying of political assessments, and the abuse
of official influence, and the purchase of positions in the
public service. The constitutionality of these sections
is not directly involved in this litigation. It is not con-
tended, that the present respondent, the city clerk, has
been guilty of any violation of the sections last referred
to. It will be time enough to consider their validity when
a case arises under either of them, which calls properly
for their consideration. If either one or more of them
should be held to be invalid, they are not so intimately
connected with the rest of the Civil Service act, as to
make the whole void. Either one of the sections could be
eliminated from the act without destroying the symmetry
or the validity of the balance of the act. In *Ex parte Cur-
tis*, 106 U. S. 371, the sixth section of an act of Congress
of August 15, 1876, prohibiting, under penalties therein
mentioned, certain officers of the United States from re-
questing, giving to, or receiving from, any other officer
money or property or other thing of value for political
purposes, was held not to be unconstitutional; and in that

case Mr. Chief Justice Waite said: "The evident purpose of Congress in all this class of enactments has been to promote efficiency and integrity in the discharge of official duties, and to maintain proper discipline in the public service. Clearly such a purpose is within the just scope of legislative power."

Our conclusion is, that the Civil Service act is not in violation of the fourteenth amendment of the Federal constitution.

*Fourth*—It is claimed, that the classification made by the civil service commissioners does not cover the clerkships and subordinate positions in the offices of the city clerk and city collector, and is not such a classification as is required by the Civil Service act. We do not regard this contention as having any force. The classification quotes section 11 of the Civil Service act, and provides that the offices and places excepted in section 11 shall constitute the unclassified service. It then provides, that "all other offices and places of employment in said city, under the provisions of said act, whether permanent, temporary or substitute, shall constitute the classified service." The classified service is divided into classes, based mainly upon the nature of the employment, the positions in one class being chiefly those of a permanent character, while the positions in the other class are more in the nature of temporary employments. The classes are designated as the official service and the labor service. The official service is divided into divisions, based upon the character of the service to be performed; and each division is divided into grades, based upon the amount of compensation. Among the divisions of the official service is Division C, designated as "clerical service," including all positions of clerks and other persons of whatever designation, rendering service as copyists, recorders, book-keepers, stenographers, pages, messengers, or any clerical, recording or similar service, whether paid by time for work done, or by the piece, or in any

other way. Among the divisions of the official service also is Division L, designated "miscellaneous service," including all the offices and places of employment coming under the provisions of said act, whatever the character and designation of the same may be, which are not included in any of the foregoing divisions of the official service, nor in the labor service, nor in the unclassified service. By this method the position of every person in the classified service of the city can be readily and exactly pointed out. The classification is of the positions and places of employment, and not of the persons. A table has been prepared by the commissioners, showing the class, division and grade of every position in the service. The city clerk and the city collector have themselves recognized the fact, that the positions in their offices are embraced within the classified service, as made by the civil service commissioners. In April and May, 1897, they made requisitions on the civil service commissioners for persons to fill positions in their offices. They addressed communications to the civil service commission, asking it to certify to them, in accordance with the civil service rules, the names of persons eligible for appointment to certain positions. The commissioners replied that they had no eligible list of examined men ready to certify from, and gave permission under section 10 of the Civil Service act to said city clerk and city collector to make temporary appointments, and notified them in such permissions that such appointments should be in force not to exceed sixty days, and only until regular appointments could be made of examined men, as provided in said section 10 of said act. Thereupon, these officers appointed men to fill these places, and so reported to the commissioners; but, without making any further requisitions or reports, or receiving any further permission, they have kept those men in their places ever since.

It sufficiently appears, that the rules and classification of the civil service commission were duly made and

adopted and enforced. We do not deem it necessary to enter into a discussion of the evidence upon this question.

*Fifth*—It is claimed that the People are estopped from maintaining this proceeding by reason of the submission made to a judge of the circuit court and a judge of the superior court, as hereinafter referred to. It seems that a controversy arose between the city comptroller, and the city clerk and certain clerks and subordinates in the city clerk's office as to whether the comptroller should audit certain monthly pay-rolls of the city clerk's office, and approve the same, and draw warrants upon the city treasurer therefor. These employes in the city clerk's office desired to have their salaries for the months of January and February, 1898, paid, although the persons demanding such payments had not been appointed to their positions in accordance with the Civil Service law. The judges, to whom this submission was made, decided that it was the duty of the comptroller to audit and approve said pay-rolls without any certifications by the civil service commission, if found to be otherwise correct, and to draw warrants therefor; and, thereupon, an order was made that the comptroller should immediately execute the proper vouchers for the payment of the January and February salaries of the employes mentioned in said proceedings.

If anybody was bound by the decision so made, only the parties to the submission proceeding above referred to were bound thereby. No evidence has been introduced, showing that the city council of the city of Chicago gave the comptroller of the city any authority to enter into and make any submission of the foregoing matters in the manner, in which such submission was made. The parties to the proceeding in question were the comptroller on one side, and the city clerk and certain of his employes on the other. The parties to the present *mandamus* proceeding are the People, acting upon the relation of the Attorney General, on the one side, and the city clerk on

the other. The People cannot be deprived of their right to compel a public officer to obey the law by any such agreed submission between other parties, as is here set up. The fact of such submission is, in no sense, a defense to this proceeding.

Let the writ of *mandamus* be issued in accordance with the prayer of the petition.  *Writ awarded.*