THE PEOPLE *ex rel.* William P. Murphy

*v.*

CHARLES E. LIPPINCOTT, Auditor, etc.

67  333
173  236
67  333
175  604
67  333
203  ¹109
e206  ³189

1. CONSTITUTIONAL LAW—*legislative power to abrogate an office.* It is a general rule, that where an office is created by statute, it is wholly within the control of the legislature creating it. The length of term and mode of appointment may be altered at pleasure, and the office may be abolished and the compensation taken away from the incumbent, unless forbidden by the constitution.

2. SAME—*office of judge of the Common Pleas court of Sparta, abolished by act of* 1871. The office of judge of the Common Pleas court of Sparta was purely the creature of the legislature under the constitution of 1848, and under that constitution liable to be abolished at any time; and such office was not protected by the constitution of 1870 until the term for which the judge had been elected should expire. The office was abrogated by the act of April 6, 1871, and thereafter the person who had been the judge of said court had no claim for any compensation as judge.

3. SAME—*extra compensation to circuit judges.* If the services or duties required or imposed by the act of January 29, 1869, are to be considered as judicial, or as pertaining to the office of circuit judge as such, the act was clearly unconstitutional, as the constitution of 1848 provided that such judges should receive $1000 *per annum and no more.* But the court are inclined to hold that the duties imposed were those of mere commissioners of revision, and the designation of those employed as circuit judges as merely *descriptio personœ.*

4. JUDGE OF COMMON PLEAS COURT OF SPARTA—*not entitled to compensation as commissioner of revision.* The judge of the Common Pleas court of Sparta, although having the powers of a circuit judge in many respects, was not intended to be included in the act of January 29, 1869, which gave circuit judges additional compensation as commissioners of revision, and he is not entitled to such compensation.

This was an application in this court for a *mandamus* against the Auditor of Public Accounts, by the relator, William P. Murphy. The respondent demurred to the relator's petition, and the demurrer was sustained. The opinion states the facts of the case.

Mr. J. BLACKBURN JONES, for the relator.

Mr. JAMES K. EDSALL, Attorney General, for the respondent.

Mr. JUSTICE MCALLISTER delivered the opinion of the Court:

The constitution of 1848 declared that, "The judges of the circuit courts shall receive a salary of $1000 per annum, payable quarterly, and no more." (Sec. 10, art. 5, const. 1848.)

January 29, 1869, an act went into force, entitled "An act in aid of a revision of the statute laws of this State," the first

section of which required the several circuit judges of the State to observe and carefully note redundancies, omissions, inconsistencies and imperfections of the public statute laws of the State and report the same to the Supreme Court annually, with their views as to how and in what manner they could be amended, and to prepare bills in conformity with such views, for which extra services, it was provided in section 3 of the act, they should each receive the sum of one thousand dollars per annum.   (Sess. L. 1869 p. 49.)

April 26, 1869, another act was passed by the same general assembly, creating the Common Pleas court of Sparta, giving that court, by one clause of section 1 of that act, concurrent jurisdiction within the city of Sparta, with the circuit court of Randolph county, in all civil and criminal cases, treason and murder excepted.   By the next clause, it was declared that the court should have concurrent jurisdiction with said circuit court in said county, when the amount did not exceed ten thousand dollars, and in all criminal cases where the punishment did not exceed ten years imprisonment in the penitentiary; and by the third clause of the section, that "the judge and clerk of said court shall, respectively, have the like power, authority and jurisdiction, and perform the like duties, as the judge and clerk of the circuit court of said county, in relation to all matters, suits, prosecutions and proceedings within said county, so far as the same is not limited by this act."

Section four of the same act, is thus: "The judge shall be called 'The judge of the Common Pleas court of Sparta,' and shall receive the same salary from the State treasury that is paid the respective judges of the circuit courts, to be paid in the same manner, and in addition thereto, a docket fee of one dollar in each and every case docketed in said court." (Sess. L. 1869, p. 138.)   Under this act, relator was elected and qualified as judge of said Common Pleas court, held the office and performed the duties thereof until April 6, 1871, when, by act of the general assembly, the above mentioned

act creating said Common Pleas court was repealed. (Sess. Laws 1871-72, p. 327.) Section 7 of the repealing act declares that, "No officer of said court of Common Pleas shall draw any salary or receive any pay or emoluments whatever, for services performed after this act takes effect."

The relator, having received his salary at the rate of one thousand dollars per annum, out of the State Treasury, down to the passage of the last mentioned act repealing the act creating the court of which he was judge, now claims, that in addition to the regular salary of $1000 per annum, provided for circuit judges by the constitution of 1848, he is, by law, entitled to the $1000 provided for such judges by the act of January 29, 1869, for the extra services required of them by that act, and which should be paid him at that rate, down to the adoption of the constitution of 1870, from which time he should receive the salary of $3000 per annum provided for circuit judges by section 16 of art. 6 of that instrument, until the act went into force July 1, 1872, fixing the salary of each circuit judge at $3500 per annum, from which time he is entitled to be paid at that rate during the whole term for which he was elected, being six years, notwithstanding the act repealing that by which the court was created, of which he was judge.

This application is made for a *mandamus* to compel the Auditor of Public Accounts to audit and allow his claim upon the basis just stated.

In the view we take of this case, the controlling questions presented by the application, are:

(1.) Whether it was within the power of the legislature, under the constitution of 1870, to deprive relator of his office by repealing the act creating the court of which he was judge.

(2.) If it was, then whether he was a circuit judge within the meaning of the act of January 29, 1869, or whether, in any view, he was entitled to the compensation therein provided.

These questions will be considered in their proper order.

It is entirely clear that there was nothing in the constitution of 1848 which would prevent the legislature from depriving relator of his office, by a repeal of the act creating it. No such court as the Common Pleas court of Sparta, nor such officer as the judge thereof, is mentioned in the constitution. They are both mere creatures of the legislature, under the proviso to section 1 art. 5, authorizing that body to establish inferior local courts of civil and criminal jurisdiction in the cities of this State. It is a general rule, that where an office is created by statute, it is wholly within the control of the legislature creating it. The length of term and mode of appointment may be altered at pleasure, and the office may be abolished and the compensation taken away from the incumbent, unless forbidden by the constitution. Cooley on Const. Lim. 276-7; *Conner* v. *New York*, 2 Sandf. 355; 5 N. Y. 285; *Butler* v. *Pennsylvania*, 10 How. (U. S.) 402-416; *Commonwealth* v. *Bacon*, 6 Serg. & Rawle, 322; *Bryan* v. *Cattel*, 15 Iowa, 538.

The case of *People ex rel.* v. *Dubois*, 23 Ill. 547, is distinguishable from this. There, the question arose as to a circuit judge, whose office was created and the term fixed by the constitution.

But the counsel for relator places the incapacity of the legislature to deprive relator of his office, upon section 6 of the schedule to the constitution of 1870, as follows:

"All persons now filling any office or appointment shall continue in the exercise of the duties thereof according to their respective commissions or appointments, *unless by this constitution it is otherwise directed.*"

It was not the purpose of this section to continue all offices otherwise under the control of the legislature, in order that every incumbent might be insured the peaceable possession of his office during his unexpired term. But the purpose is indicated in the heading to the schedule, viz: "That no inconvenience may arise from the alterations and amendments

made in the constitution of this State, and to carry the same into complete effect, it is hereby ordained and declared ;" and the proviso to section 6, "unless by this constitution it is otherwise directed," shows that it was intended the right of persons then in office to continue to exercise the duties thereof, was to be entirely subject to the other provisions of the instrument. In that connection we will look at section 5 of the schedule, and immediately preceding that above quoted : "All existing courts which are not in this constitution specifically enumerated, shall continue in existence and exercise their present jurisdiction *until otherwise provided by law.*"

The court in question is not one of those specifically enumerated in the constitution. If so, then, by the express language just quoted, its existence was continued, subject to the power of the legislature to determine it, which was done by the act of April 6, 1871, and the relator was thereby constitutionally deprived of his office.

The remaining question is, whether relator was to be regarded as circuit judge, within the meaning of the act of January 29, 1869, so as to entitle him to the compensation therein provided. If the services or duties required or imposed by that act are to be considered as judicial, as pertaining to the office of circuit judge as such, the act was clearly unconstitutional, because the constitution of 1848 declared that the judges of the circuit courts should receive a salary of $1000 *per annum*, payable quarterly, *and no more.* But we are inclined to hold that the duties were those of mere commissioners of revision, and the designation of those employed, as circuit judges, may be regarded as a mere *descriptio personœ.* The relator does not fall within that description by the name of office given to him by the act creating the Common Pleas court, because, as we have shown, it is there provided that he shall be called "the Judge of the Common Pleas Court of Sparta." Nor does he fall within it, by having the same powers and duties conferred and imposed upon him as upon the circuit judge of Randolph county. It is true, the second

and third clauses of the first section of the act creating the court, purport to do so, but those provisions are clearly unconstitutional and void. *The People* v. *Evans*, 18 Ill. 362; *Holmes* v *Fihlenburg*, 54 Ill. 203.

The relator does not allege in his petition, that he ever entered upon the performance of any of the duties required by the act in question, and upon the whole case we are of opinion that he is not entitled to any of the sums claimed.

The demurrer to the petition will therefore be sustained and the writ of *mandamus* refused.

*Mandamus refused.*