THE PEOPLE *ex rel.* Mary A. Ahrens

*v.*

WILLIAM J. ENGLISH *et al.*

*Filed at Ottawa January 18, 1892.*

1. ELECTIONS—*whether women may be authorized by statute to vote for county superintendent of schools.* The act entitled "An act to entitle women to vote at any election held for the purpose of choosing any officer under the general or special school laws of this State," approved June 19, 1891, does not confer upon women, although they are citizens of the United States and above the age of twenty-one years, the right and privilege of voting at an election for county superintendent of schools, and the act, so far as it attempts to do so, is in violation of the constitution, and void.

2. ELECTORS—*qualifications prescribed by the constitution.* Where the constitution has fixed the qualifications of electors, such qualifications can not be changed or added to by the legislature, or otherwise than by an amendment of the constitution. The legislature has no power to confer the elective franchise upon other classes than those to whom it is given by the constitution.

3. The constitutional qualification of electors is applicable, at least, in all cases of an election held for an officer who is mentioned or provided for in the constitution, unless it is indicated by that instrument that such officer may be otherwise elected or appointed, or that the legislature or some other body may determine by whom such officer may be elected or appointed.

4. CONSTRUCTION OF STATUTES—*meaningless words rejected as surplusage.* An act prescribing the qualifications of women to vote, required that female voters should belong to one or another of the three classes mentioned in article 7 of the constitution, the third of which embraces male citizens of the United States above the age of twenty-one years, thereby, by reference, copying such requirement into the act : *Held,* that the word "male" was repugnant to the act, and entirely inconsistent with its scope and design, and therefore the word "male" was to be rejected as meaningless.

5. The evident intention of the legislature, by the act of 1891, was to give to women the right to vote at the election of public school officers, provided they are twenty-one years of age, and have resided in the State, county and election district the proper length of time required as to male voters, and have been duly registered.

6. A statute is to be interpreted according to its true intent and purpose, and its strict letter must be made to yield to the obvious intent. Words which are meaningless, or inconsistent with the intention otherwise plainly expressed in an act, may be rejected as redundant or surplusage.

This is a petition filed in this court by Mary A. Ahrens, against William J. English and others, the board of election commissioners of Cook county. The respondents demurred to the petition. The material facts of the case appear in the opinion.

Mr. A. Y. HIRSCHL, for the petitioner:

The constitutional clause that voters shall be males, does not refer to school elections, but only to political offices.

The school districts are *quasi* corporations, of a charitable nature. They exert no functions of government. That the constitution refers only to political offices, and that the articles in the constitution on education are to be construed by themselves, and that article 8 should be thus construed, is the unanimous line of decision. *Belles* v. *Burr,* 76 Mich. 11 ; *Hate* v. *Cones,* 15 Neb. 444; *Wheeler* v. *Brady,* 15 Kan. 30 ; *Distine* v. *Dubuque,* 7 Iowa, 286.

In Illinois the same thing is said. In a decision in 1875 the word "ballot," in the constitution of 1870, was held not to apply to school elections. *Bernier* v. *Russell,* 89 Ill. 61.

General political election laws have no application to village elections. (*Soucy* v. *People,* 113 Ill. 110.) Hence the word "election" is limited in the constitution, and clearly does not control schools ; nor article 8 of the constitution, which is a constitutional department by itself, of equal dignity with the others.

The "system" of schools is more comprehensive than the management. *Speight* v. *People,* 87 Ill. 601.

All laws affecting schools are "school laws," and come under article 8, section 1.

There is "no limit as to agencies" which the legislature may use. *Fuller* v. *Heath*, 89 Ill. 313.

Mr. LAWRENCE P. BOYLE, for the respondents

Section 1, article 7, of the constitution, defines the qualifications of voters. The constitution having defined the qualifications of electors, the legislature can not add thereto. Section 5 of article 8 of the constitution does not reserve to the legislature the power to confer the privilege of voting upon women. If it does, the same right is reserved with reference to the election of county commissioners of Cook county. Cooley's Const. Lim. secs. 753, 754; *Green* v. *Shimway*, 39 N. Y. 418; *Brown* v. *Grover*, 6 Bush, 1; *Quinn* v. *State*, 35 Ind. 485; *Huber* v. *Reilly*, 53 Pa. St. 112; *People* v. *Canaday*, 73 N. C. 198; *State* v. *Neal*, 42 Mo. 119.

Another rule laid down by Cooley (page 78, same edition,) is as follows: "Another rule of construction is, that when the constitution defines the circumstances under which a right may be exercised or a penalty imposed, the specification is an implied prohibition against legislative interference to add to the condition or to extend the penalty to other cases," and he cites the following: *Rison* v. *Farr*, 2 Ark. 161; *Railroad Co.* v. *Buchanan County Court*, 39 Mo. 485; *State* v. *Williams*, 5 Wis. 308; *State* v. *Baker*, 38 id. 72; *Monroe* v. *Collins*, 27 Ohio, 665; *State* v. *Symonds*, 57 Me. 248; *State* v. *Staten*, 6 Col. 243; *Davis* v. *McKeeby*, 5 Neb. 369; *Quinn* v. *State*, 35 Ind. 485; *McCafferty* v. *Guyer*, 55 Pa. St. 209; *Clayton* v. *Harris*, 7 Nev. 64; *Randolph* v. *Good*, 3 W. Va. 551.

If the legislature attempted to confer the right to vote on others than those who have the qualifications named in article 1, section 7, of the constitution, it transcended its powers and the law is unconstitutional.

If the legislature intended, as it appears it did, to confer the right to vote upon women, provided they belong to any of the classes mentioned in article 7 of the constitution, the law is

constitutional, because it is within the limits of the organic law; but since women do not belong to either of these classes, it is nugatory or inoperative, for the conditions or contingencies do not exist that could bring it into operation.

Mr. JUSTICE BAKER delivered the opinion of the Court:

This is a petition for *mandamus*, filed in this court by the People of the State of Illinois, upon the relation of Mary A. Ahrens, against William J. English, John J. Healy and Luke Coyne, composing the board of election commissioners in and for the city of Chicago, in the county of Cook and State of Illinois. The material question involved in the proceeding is, whether or not the act of the General Assembly of this State entitled "An act to entitle women to vote at any election held for the purpose of choosing any officer under the general or special school laws of this State," approved June 19, 1891, (Laws of 1891, p. 135,) confers upon the petitioner, Mary A. Ahrens, she being a citizen of the United States, and a woman of the age of twenty-one years and upwards, the right and privilege of voting at an election for county superintendent of schools.

Section 1 of said act is as follows: "Any woman of the age of twenty-one years and upwards, belonging to either of the classes mentioned in article 7 of the constitution of the State of Illinois, who shall have resided in this State one year, in the county ninety days, and in the election district thirty days preceding any election held for the purpose of choosing any officer of schools under the general or special school laws of this State, shall be entitled to vote at such election in the school district of which she shall at the time have been for thirty days a resident: *Provided,* any woman so desirous of voting at any such election shall have been registered in the same manner as is provided for the registration of male voters."

Section 2 of the act is as follows: "Whenever the election of public school officers shall occur at the same election at

40—139 ILL.

which other public officers are elected, the ballot offered by any woman entitled to vote under this act shall not contain the name of any person to be voted for at such election except such officers of public schools, and such ballots shall all be deposited in a separate ballot-box, but canvassed with other ballots cast for school officers at such election."

The words, "belonging to either of the classes mentioned in article 7 of the constitution of the State of Illinois," found in section 1 of the act, manifestly refer to section 1 of article 7 of the State constitution. That section of the constitution reads thus: "Every person having resided in this State one year, in the county ninety days, and in the election district thirty days next preceding any election therein, who was an elector in this State on the first day of April, in the year of our Lord 1848, or obtained a certificate of naturalization before any court of record in this State prior to the first day of January, in the year of our Lord 1870, or who shall be a male citizen of the United States above the age of twenty-one years, shall be entitled to vote at such election."

There are three classes of persons "mentioned" in said constitutional provision,—*i. e.*, those who were electors in the State on April 1, 1848, those who, prior to January 1, 1870, obtained certificates of naturalization from any court of record in this State, and *male* citizens of the United States above the age of twenty-one years. No averments are made in the petition that show, or even claim, that the petitioner belongs to either the first or the second of these classes. Indeed, it is plain, both as matter of law and matter of history, that there are no women who were electors in this State on the first day of April, 1848; and it is at least improbable that there are any women in the State who are included within the second of said designated classes. It may be suggested, parenthetically, that if it be that women born in this State and country, and of parents who are citizens here, and not invested with the right of suffrage, it would probably be placing an unreasonable

interpretation upon this second specification of legal voters, and upon the statute under consideration, to hold that they conferred the elective franchise upon women of alien birth who obtained certificates of naturalization in courts of this State prior to January 1, 1870. The qualifications prescribed for a voter of the third class are three. The voter must be a citizen of the United States, a male, and above the age of twenty-one years. The theory of the petition is, that the petitioner, although a woman, is, by virtue of the act under examination, entitled to vote for county superintendent of schools because she is a citizen of the United States, is of the age of twenty-one years and upwards, and has resided in the State one year, in the county ninety days, and in the election district thirty days.

The act makes direct reference to "the classes mentioned" in the constitutional provision, and thereby reads into the act the designated part of the constitution. If the language of the act and the words of the constitution thus incorporated therein are construed literally, they would seem to indicate that it was the legislative intention to confer upon women the right to vote at any election held for the purpose of choosing any officer of schools under the general or special school laws of the State, provided such women are *males*. A construction that would lead to such an absurdity is wholly inadmissible. A statute is to be interpreted according to its true intent and purpose, and its strict letter must be made to yield to the obvious intent. Words which are meaningless or inconsistent, with the intention otherwise plainly expressed in an act, may be rejected as redundant or surplusage. (Sutherland on Stat. Construction, sec. 260.) Here, the word "male," read into the statute from the constitutional provision referred to therein, is repugnant to the language of the statute both preceding and following the part where such reference is made, and is wholly inconsistent with the entire scope and manifest intent of the act. The evident intention of the legislature was to give women

the right to vote at the election of public school officers, provided they are twenty-one years of age and have resided in the State, county and election districts the respective lengths of time required, and have been registered in cases where the registration of voters is provided for.

Section 5 of article 8 of the State constitution provides: "There may be a county superintendent of schools in each county, whose qualifications, powers, duties, compensation, and time and manner of election, and term of office, shall be prescribed by law." It is thus perceived that mention is made in the constitution, of the county superintendent of schools, and that it is indicated therein that he or she is to be selected at an "election." We may assume that said provisions for such officer, and for his or her election, did not become operative by force of the constitution itself, and without aid from an act of the legislature. But the legislature having, in 1872, under and in furtherance of this constitutional provision, enacted a statute which provided for such an officer as a county superintendent of schools in each and every county of the State, it must be regarded that such county superintendent is to all intents and purposes a constitutional officer. The constitution having thus made provision for such officer, and for his or her "election," and having prescribed, in section 1 of article 7, the qualifications essential to entitle a person to vote at "any election," it must be presumed that it was and is the true intent and meaning of that instrument that no person should have the right to vote for a county superintendent of schools who does not possess such qualifications. It would seem this must be so, unless there is something either in said section 5 of article 8, or elsewhere in the constitution, which indicates an intention otherwise.

Said section 5 provides not only that the qualifications, powers, duties, compensation and term of office of the county superintendent of schools shall be prescribed by law, but also that the "time and manner of election" of such superintendent

"shall be prescribed by law." What is meant by the expression, "manner of election?" Was it intended thereby to give to the legislature the power of prescribing the qualifications which would entitle persons to vote at any election for such county superintendent? The word "manner" is usually defined as meaning, way of performing or executing; method; custom; habitual practice, etc. Said word is used in several different instances in the constitution in connection with the matter of elections. In section 7 of article 10 it is provided: "The county affairs of Cook county shall be managed by a board of commissioners of fifteen persons, ten of whom shall be elected from the city of Chicago, and five from towns outside of said city, in such *manner* as may be provided by law." It will hardly be contended that by virtue of the words, "in such manner as may be provided by law," it would be competent for the legislature to enact that at elections in Cook county for members of the board of county commissioners, either all women of the age of twenty-one years, or all aliens who have declared their intention to become citizens of the United States, may vote. Section 4 of the same article provides: "No county seat shall be removed until  *  *  *  three-fifths of the voters of the county, to be ascertained in such manner as shall be provided by general law, shall have voted in favor of its removal." There is no ground for a claim that by force of the expression, "in such manner," the legislature has power to provide, by general law, that women and aliens may vote upon all propositions for the removal of county seats. So, also, section 3 of article 5 provides that elections for Governor, Lieutenant-Governor, Secretary of State, Auditor of Public Accounts, Attorney General, Superintendent of Public Instruction and Treasurer shall be held "in such manner as may be prescribed by law," and section 20 of the same article, that in case of a vacancy in either of said offices, the successor shall be elected "in such manner as may be provided by law." But it is useless to refer to the numerous other instances in which

the word "manner" is used in the constitution. We think that the word "manner" found in section 5 of article 8 of the constitution should receive like interpretation with that placed upon the same word found in articles 5 and 10 of the same instrument, and that said word in article 5 indicates merely that the legislature may provide by law the usual, ordinary or necessary details required for the holding of the election.

It is suggested that article 8 of the constitution, entitled "Education," makes it the duty of the General Assembly to provide "a system of free schools," and that therefore the various sections in said article 8 should be construed by themselves, and without reference to other provisions contained in the constitution. The conclusion reached does not seem to follow from the premises stated. The General Assembly, in accordance with the mandate of the constitution, passed an act, in 1872, "to establish and maintain a system of free schools." (Rev. Stat. 1874, p. 947.) The State Superintendent of Public Instruction and the county superintendents of schools were made component and important parts of the system established by the act, and their duties were therein defined, and provisions therein made for their election. But notwithstanding this, the requirements of sections 3 and 20 of article 5 of the constitution, in regard to the election of a State Superintendent of Public Instruction, still remained in full force, as also did the provision of the constitution which fixed the qualifications of those who could vote at an election for such State Superintendent, or for any other officer provided for in the constitution.

In Cooley's Constitutional Limitations, at star page 599, it is said: "Wherever the constitution has prescribed the qualifications of electors, they can not be changed or added to by the legislature, or otherwise than by an amendment of the constitution." In *McCafferty* v. *Guyer et al.* 59 Pa. St. 109, it was said by STRONG, J.: "It has always been understood that the legislature has no power to confer the elective fran-

chise upon other classes than those to whom it is given by the constitution, for the description of those entitled is regarded as excluding all others." But it is useless to multiply citations, for the books and the opinions in decided cases are full of like statements of the law. We understand the law to be as is stated in the above quotations, and that such law is applicable, at least, in all cases of an election held for an officer who is mentioned, as provided for in the constitution, unless it is indicated by that instrument that such officer may be otherwise elected or appointed, or that the legislature or some other body may determine by whom such officer may be elected or appointed. It may be that it is competent for the legislature to provide that women who are citizens of the United States, and over twenty-one years of age, may vote at elections held for school directors and other school officers, who are not mentioned in the constitution; but that question is not before us for decision, and we therefore express no opinion in regard to it. We think, however, since the petitioner is not included within either the first or second class of qualified voters mentioned in the constitution, and being a woman, does not fall within the third class,—*i. e.,* of male citizens of the United States above the age of twenty-one years,—that the legislature had and has no power or authority to invest her with the right to vote at an election held for a county superintendent of schools.

Much reliance is apparently placed by petitioner upon the cases of *Belles* v. *Burr,* 76 Mich. 1, *Wheeler* v. *Brady,* 15 Kan. 26, and *State* v. *Cones,* 15 Neb. 444. We do not consider said cases as here in point, or that the decisions which were rendered in them are in conflict with the conclusion which we have reached in the present controversy. In the Michigan case the question at issue was in regard to the right of the plaintiff, a woman, to vote, under a statute of that State, at an election for school trustees of a school district, and the court, speaking of the constitution of the State, said: "But no officer of

the school district is mentioned or recognized by that instrument. The reason is, that the whole primary school system was confided to the legislature, and it can not be said that the officers of school districts, chosen pursuant to the system adopted by the legislature, are constitutional officers. * * * While it must be conceded that no person can vote for the election of any officer mentioned in the constitution unless he possesses the qualifications of an elector prescribed by that instrument, it does not follow that none but such electors can vote for officers which the legislature has the right to provide for, to carry out the educational purpose declared in that instrument." This is a plain intimation that if the constitution of Michigan had provided for or mentioned school trustees of school districts, then the decision in that case would have been otherwise. In the Kansas case the controversy was as to the right of women, under a statute of the State, to vote at a school district meeting for school district treasurer. The court, referring to the State constitution, said: "And it does not anywhere even mention school district elections or meetings. It provides for, or at least recognizes, the election of various officers, * * * but it does not anywhere even mention the election of any school district officers." The question involved in the Nebraska case was substantially the same as that in the Kansas case,—certain women having voted at a district school meeting for school trustees of the district,—and the court held that the provisions in the State constitution in regard to elections did not apply to school districts, and that the act allowing women to vote at school meetings was valid, and cited the Kansas case as an authority.

It is ordered that the demurrer to the petition for *mandamus* be sustained, that the writ of *mandamus* be denied, and that the petition be dismissed.

*Writ denied.*