THE PEOPLE *ex rel.* Frank P. Sadler, Petitioner, *vs.* HARRY OLSON *et al.* Respondents.

*Opinion filed June 29, 1910.*

1. OFFICES—*office created by legislative action is wholly within legislative control.* If an office is not an office of constitutional origin but is created by legislative action it is wholly within the control of the legislature creating it, and it is competent for the legislature to declare the manner of filling it, and to change, from time to time, the mode of election or appointment.

2. CONSTITUTIONAL LAW—*article 6 is source of all legislative authority.* Article 6 of the constitution covers the whole judicial power of the people of the State and is the source of all legislative authority respecting courts; and the municipal court of Chicago is one of the courts which section 1 of article 6 provides may be created by law in and for cities and incorporated towns.

3. SAME—*amendment of 1904 is not the source of legislative authority to create municipal court.* Section 34 of article 4 of the constitution, adopted as an amendment in 1904, is not a new source of judicial power and does not authorize the legislature to create municipal courts but only confers authority to establish a municipal government for the city of Chicago; but it is in keeping with such object to regulate the practice and methods of a municipal court for the city which might be created under the already existing authority of section 1 of article 6.

4. SAME—*legislative construction of doubtful provision of constitution is entitled to great weight.* The legislative construction placed upon a doubtful provision of the constitution is entitled to great weight and consideration, and where an act has been recognized, sanctioned and acquiesced in by the different departments of the government and by the people for many years, such practical construction raises a strong presumption that it is correct.

5. SAME—*judges of municipal court are not officers provided for in article 6 of the constitution.* Article 6 of the constitution authorizes the legislature to create municipal courts in its discretion, but it does not "provide" for such courts, in the sense that judges of municipal courts which may be created shall be deemed "officers provided for" in said article, whose term of office, under section 32 thereof, is fixed at four years.

6. SAME—*section 9 of the Municipal Court act, fixing term of judges, is valid.* It is within the power of the legislature, when creating a municipal court for a city or incorporated town, to fix the term of such office, and hence section 9 of the Municipal Court act, providing the manner of filling the offices of associate justices of such court and fixing the term of office, after the first election, at six years, is valid.

ORIGINAL petition for *mandamus.*

MUSGRAVE & LEE, for petitioner.

TENNEY, COFFEEN, HARDING & SHERMAN, (HORACE KENT TENNEY, of counsel,) for respondents.

HENRY M. SHABAD, S. S. GREGORY, J. HAMILTON LEWIS, and EDWARD F. DUNNE, *amicus curiæ.*

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

The relator, Frank P. Sadler, was one of nine associate judges of the municipal court of the city of Chicago who were elected in November, 1906, for a term of two years from the first Monday of December following their election, in accordance with the provisions of section 9 of the act establishing said court. (Laws of 1905, p. 157.) He was commissioned by the Governor for the term of two

years for which he was so elected and until his successor should be qualified, and he entered upon the duties of his office and performed the same for two years. In November, 1908, another election was held to choose successors to said judges for a term of six years. Six of the judges were re-elected, and the relator (who was not a candidate) and two other judges were not re-elected and were not afterward recognized as judges of the court. In their places Sheridan E. Fry, Hugh R. Stewart and Joseph Z. Uhlir were declared elected associate judges, were commissioned by the Governor for a term of six years, entered upon the duties of their office on the first Monday of December, 1908, and are still acting as judges of the municipal court. The relator presented to this court his motion for leave to file a petition for *mandamus,* directed to Harry Olson, chief justice of said court, commanding him to recognize the relator as an associate judge of said court and to assign him to duty as such and permit him to exercise the duties of the office. Leave was given to file a petition, and it was filed, stating the foregoing facts, and making said Harry Olson, chief justice, Sheridan E. Fry, Hugh R. Stewart and Joseph Z. Uhlir defendants. The ground upon which the writ is sought is, that by section 32 of article 6 of the constitution the term of office of an associate judge of the municipal court is fixed at four years, and that section 9 of the Municipal Court act, which provides that the first election of judges shall be for terms of two, four and six years and subsequent elections shall be for six years, is in conflict with the constitution. Section 65 of the act provides that if the provision of section 9 for the term of office is found to be invalid the term shall be four years, and the relator claims that by virtue of that section he is entitled to hold his office for the full term of four years, until the first Monday of December, 1910. If that position is correct the three judges elected in November, 1908, were not legally chosen, and the second election being invalid,

the judges who were re-elected will hold office only until the first Monday of December, 1910. The defendants appeared and demurred to the petition, and the cause has been argued and submitted for decision on the demurrer.

The powers of the government of this State are divided by the constitution into three distinct departments: the legislative, executive and judicial. Article 6 creates the judicial department, consisting of certain enumerated courts, and confers upon the legislature authority to create certain other courts. Section 32 of that article, so far as it relates to the controversy in this case, is as follows: "All officers provided for in this article shall hold their offices until their successors shall be qualified, and they shall, respectively, reside in the division, circuit, county or district for which they may be elected or appointed. The terms of office of all such officers, where not otherwise prescribed in this article, shall be four years." The question therefore is whether judges of the municipal court of Chicago are officers provided for in that article. If they are, the term of office is four years; but if they are officers of courts which may be provided for by the legislature, the term of office is such as the legislature may prescribe.

The well known rule is, that where an office is created by legislative action it is wholly within the control of the legislature creating it. If it is not an office of constitutional origin it is competent for the legislature to declare the manner of filling it, and to change, from time to time, the mode of election or appointment. (*People* v. *Loeffler,* 175 Ill. 585.) Section 1 of article 6 is as follows: "The judicial powers, except as in this article is otherwise provided, shall be vested in one Supreme Court, circuit courts, county courts, justices of the peace, police magistrates, and such courts as may be created by law in and for cities and incorporated towns." Subsequent sections provide for the organization and jurisdiction of the courts mentioned in section 1, and provide for the Supreme Court, circuit courts,

county courts, justices of the peace, police magistrates and constables, the circuit and superior courts of Cook county and State's attorneys. In addition to the authority conferred upon the legislature by section 1 to create courts for cities and incorporated towns, the article empowers the legislature to provide for the establishment of a probate court in each county having a population of over 50,000, and after the year 1874 to create inferior appellate courts in districts formed for that purpose. It fixes the terms of office of most of the officers of said courts as follows: Judges of the Supreme Court nine years; judges of the circuit court six years; judges of the county court four years; judges of the circuit and superior court of Cook county six years, and State's attorneys four years. If probate courts are established, the term of office of the judges is to be the same as that of the judge of the county court, and Appellate Courts are to be held by judges of the circuit courts, whose terms are fixed. It does not fix the term of office of justices of the peace, police magistrates and constables, except as to justices of the peace in the city of Chicago. There are, therefore, officers of courts specified in the article whose terms of office are not therein prescribed except by the general provision of section 32, and a legitimate purpose of that section unquestionably was to fix their terms of office.

Article 4 of the constitution relates to the legislative department, and section 34 of that article was adopted in 1904 as an amendment to the constitution. It provides that the legislature shall have power, subject to the conditions and limitations therein contained, to pass any law, local, special or general, providing a scheme or charter of local municipal government for the territory within the limits of the city of Chicago, and in case the legislature shall create municipal courts in the city of Chicago, it may abolish the offices of justices of the peace, police magistrates and constables in and for the territory within said city, and

may limit the jurisdiction of justices of the peace in the territory of said county of Cook outside of said city to that territory, and in such case the jurisdiction and practice of said municipal courts shall be such as the legislature shall prescribe. The act establishing the municipal court of the city of Chicago was thereafter passed, with special provisions relating to practice as authorized by the amendment, and the act was held to be valid in the case of *City of Chicago* v. *Reeves, 220* Ill. 274. It was there decided that the provision of the constitution prohibiting the legislature from proposing amendments to more than one article of the constitution at the same session had not been violated; that the purpose of the amendment was to empower the legislature to establish a local municipal government in the city of Chicago, and that the accomplishment of that object might involve implied amendments of other articles of the constitution so far as necessary to bring all its provisions into harmony. The purpose of the amendment was to give the legislature power, in adopting a scheme of local government for the city of Chicago whereby the ordinances of the city and the laws of the State might be enforced within the municipality, to abolish the offices of justices of the peace, police magistrates and constables within the city, to prevent justices of the peace outside of the city exercising jurisdiction within it, and to substitute municipal courts, with jurisdiction and a system of practice adapted to the object sought to be attained. The amendment is not a new source of judicial power and it does not authorize the legislature to create municipal courts, but only confers authority to establish municipal government for the city.

Although the powers of government fall into the distinct departments of the legislative, executive and judicial, a municipal government embraces all of them. There is the legislative department, which ordains what the local laws shall be; the executive, charged with the duty of seeing that they are executed; and the courts, in which they

are construed, applied and enforced. If an efficient local government was to be established, it was in keeping with that object to regulate the practice and methods of procedure in the municipal court. But the authority to create such a court already existed by virtue of section 1 of article 6. There is no substantial or material difference between the terms "city court" and "municipal court," both of which are courts of the municipality in which they are established, and the municipal court of the city of Chicago is one of the courts which section 1 of article 6 provides may be created by law in and for cities and incorporated towns. (*Miller* v. *People,* 230 Ill. 65; *Hosking* v. *Southern Pacific Co.* 243 id. 320; *Chicago Terminal Railroad Co.* v. *Greer,* 223 id. 104.) That article covers the whole judicial power of the people of the State and is the source of all legislative authority respecting courts. (*Missouri River Telegraph Co.* v. *First Nat. Bank,* 74 Ill. 217.) That being true, it is contended by counsel for the relator that the judges of the municipal court are officers provided for by article 6 of the constitution, and therefore their terms of office are fixed by section 32 at four years.

In the constitution of 1848 there was a provision similar to the one now being considered, relating to the eligibility of judges, but much more inclusive in its terms, and that provision was construed by this court. Article 5 of that constitution dealt with the judiciary department, and section 1 provided as follows: "The judicial power of this State shall be and is hereby vested in one Supreme Court, in circuit courts, in county courts, and in justices of the peace: *Provided,* that inferior local courts, of civil and criminal jurisdiction, may be established by the General Assembly in the cities of this State." Section 11 of the article contained this provision: "No person shall be eligible to the office of judge of any court of this State who is not a citizen of the United States, and who shall not have resided in this State five years next preceding his elec-

tion, and who shall not for two years next preceding his election have resided in the division, circuit or county in which he shall be elected." The legislature created a city court of the city of Chicago under the name of "the recorder's court," and Robert S. Wilson was elected judge. He had not resided in this State five years next preceding his election, and if the judge of a city court was included in the language of section 11 he was not eligible. His right to the office was questioned by an information in the nature of *quo warranto,* and this court held that while his office was that of a judge of a court in a legal sense and the recorder's court was one which the legislature might create, yet the office of judge of that court was not such a one as was referred to in section 11. It was said in the opinion adopted by the court that on every recognized principle of construction the language used could not include any judge except such as were made judges or recognized as such by the constitution, and did not include a judge of a city court created by the legislature by authority of the constitution. In framing the present constitution the provision as to terms of office was limited to officers provided for in the same article and was not as broad as the provision of the former constitution, and if it had been, it would be presumed, under a recognized rule of construction, that the language was intended to have the same meaning already given to it by the court.

Under the same constitution an act was passed in 1869 creating the common pleas court of Sparta, and on April 6, 1871, the act creating the court was repealed. The judge applied to this court for a *mandamus* against the Auditor of Public Accounts commanding him to pay the salary to the judge after the repealing act was passed. The court said it was entirely clear that there was nothing in the constitution of 1848 which would prevent the legislature from depriving the relator of his office by repeal of the act creating it; that no such court as the common pleas court

of Sparta, nor such officer as the judge thereof, was mentioned in the constitution; that both were mere creatures of the legislature under the proviso to section 1 of article 5, authorizing that body to establish inferior local courts of civil and criminal jurisdiction in the cities of the State, and the writ was denied. (*People* v. *Lippincott,* 67 Ill. 333.) The court affirmed the rule that where an office is created by statute it is wholly within the control of the legislature creating it; that the length of the term of the officer and mode of appointment may be altered at pleasure, and the office may be abolished and the compensation taken from the incumbent unless forbidden by the constitution. If the court of common pleas of Sparta was a creature of the legislature by virtue of authority to establish inferior local courts in the cities of the State, the municipal court, created by statute under authority to create such courts for cities and incorporated towns, is also a creature of the legislature and not a court provided for by the constitution.

There is another consideration of much importance in construing the provision in question here. The legislative construction placed upon a doubtful constitutional provision is entitled to great weight and consideration, and where an act has been recognized, sanctioned and acquiesced in by the different departments of the government and the people for many years, such practical construction raises a strong presumption that it is correct. (*People* v. *Knopf,* 171 Ill. 191; *Boehm* v. *Hertz,* 182 id. 154; *Nye* v. *Foreman,* 215 id. 285; *City of Chicago* v. *Reeves, supra.*) Section 11 of article 6 provides that after the year 1874 Appellate Courts may be created, to be held by judges of the circuit courts in districts formed for that purpose, and a clerk is an essential part of a court of record. A judge is undoubtedly an officer of his court, and if courts are provided for by the article, officers are also provided for. The constitution does not create either city courts or Appellate Courts, and does not require the legislature to

create them but gives authority to do so. If section 32 applies to officers of courts created by the legislature under authority of the constitution it necessarily applies to clerks of the Appellate Courts. But the act establishing Appellate Courts, passed in 1877, fixed the term of office of the clerks of those courts at six years. The legislature thereby gave a construction to the provision of the constitution, and that construction has been recognized and acted upon as correct by all public officers, the executive and the courts for over thirty years. Such a construction will, in general, control whenever the question is in a degree doubtful or open to reasonable debate. *Nye* v. *Foreman, supra;* 6 Am. & Eng. Ency. of Law, (2d ed.) 931; 8 Cyc. 736.

If, however, we were without any guide in judicial decisions under the constitution of 1848 or legislative construction acquiesced in for a long period of time, we would have reached the same conclusion from a consideration of the language of the constitution. We do not see how it can be said that courts are in any proper sense provided for by the constitution when such courts may never be created, but it is entirely optional with the legislature whether they or their officers shall ever have any existence. So far as providing for them is concerned, the most that can be said is that provision is made for their creation by the legislature, and if created they are of legislative origin. The only relation of section 1 to the subject is that it confers authority to create such courts, without which the legislature would be powerless to create them, since the enumeration of courts in article 6 is a limitation on the power of the legislature. The legislature may fill the place provided in the judicial system with city courts, but whether it shall be done or not is left entirely to legislative discretion.

Our conclusion is that section 9 is valid, and that the relator's term of office expired on the first Monday of December, 1908.

The writ is denied.

*Writ denied.*