THE PEOPLE ex rel. Peter Jurgensen, Petitioner, vs. AN-
THONY CZARNECKI et al. Respondents.

*Opinion filed December 16, 1914.*

1. ELECTIONS—*county commissioners of Cook county are con-
stitutional officers.* The county commissioners of Cook county are
constitutional officers as distinguished from legislative officers, so
called, who are elected to offices which can be created by the leg-
islature.

2. SAME—*the legislature cannot change qualifications of elect-
ors for county commissioners.* The legislature has no power to
change the qualifications specified in section 1 of article 7 of the
constitution for electors for county commissioners, notwithstanding
section 7 of article 10 of the constitution provides that such com-
missioners shall be selected "in such manner as may be provided
by law," as the word "manner" refers only to the usual details re-
quired for holding an election.

3. SAME—*women cannot vote for the county commissioners of
Cook county nor for the president of such board.* The Women's
Suffrage act of 1913 does not authorize women to vote for county
commissioners of Cook county, nor can they vote for the president
of such board of commissioners even though such office is not pro-
vided for in the constitution, as the law requires that the president
of the board must be one of the candidates for the office of county
commissioner.

ORIGINAL petition for *mandamus.*

MACLAY HOYNE, State's Attorney, AMOS C. MILLER,
SIDNEY S. GORHAM, HENRY W. WALES, and GILBERT
NOXON, for petitioner.

I. T. GREENACRE, SEYMOUR STEDMAN, and CATHERINE
WAUGH McCULLOCH, for respondents.

Mr. JUSTICE CRAIG delivered the opinion of the court:

The relator, upon leave duly obtained, filed in this court
his original petition for a writ of *mandamus* against the
respondents, constituting the board of election commission-

ers of the city of Chicago, praying that a writ of *mandamus* directed to said respondents may issue, commanding them to print and furnish to the judges of election for the November 3, 1914, election in the city of Chicago and the town of Cicero, to be used in voting by the legal women voters at said election, legal ballots which shall contain no names of candidates for the offices of members of the board of commissioners of Cook county and which shall contain no names of candidates for president of the board of county commissioners of Cook county, pursuant to the duties imposed upon said board of election commissioners by virtue of the act of the General Assembly providing for the printing and distribution of ballots at public expense, approved June 22, 1891. By leave granted, the State's attorney of Cook county was also allowed to intervene as an additional relator, with the right to join in the prayer of the petition. Respondents appeared and filed their general demurrer to said petition. By the petition and demurrer the question is raised as to the right of women voters to vote for the candidates for the offices of county commissioner and president of the board of county commissioners of Cook county.

Section 1 of article 7 of the constitution of 1870 originally prescribed the qualifications of voters and restricted the elective franchise to male citizens above the age of twenty-one years, and the General Assembly that met after the adoption of the constitution enacted a law fixing the qualifications of voters the same as provided by the constitution. (Hurd's Stat. 1913, chap. 46, sec. 65.) This law remained in force without change until in 1891, when the General Assembly enacted a law providing that any woman who is a citizen of the United States and has attained the age of twenty-one years, and who has resided in the State one year, in the county ninety days and in the election precinct thirty days preceding an election held for the purpose of choosing any school officer under the general or special school laws of this State, shall be entitled to vote

at such election. The constitutionality of this law was attacked and came before this court in the case of *People* v. *English,* 139 Ill. 622, in which case this court decided that the legislature had no power to give to women the right to vote for a county superintendent of schools, for the reason that such officer was provided for by the constitution, and that no person not possessing the qualifications of electors as prescribed in section 1 of article 7 of the constitution had the right to vote for such constitutional officer. The law of 1891 was again before this court in the case of *Plummer* v. *Yost,* 144 Ill. 68, in which case this court held that the law was constitutional so far as it involved the right of women to vote for school officers other than the county superintendent of schools and the State superintendent of public instruction, who were constitutional officers as distinguished from legislative officers, so-called, who are elected to offices that are created by the legislature.

On June 26, 1913, there was enacted by the General Assembly the so-called Woman's Suffrage act, which provides that women citizens of the United States possessing certain qualifications as to age and residence shall be allowed to vote at elections for certain officers named in the act, all of which are legislative officers, and it is by reason of this law that women have the right, if at all, to vote for candidates for the offices of county commissioners and president of the board of county commissioners of Cook county. This law has been held valid and constitutional by this court in the recent case of *Scown* v. *Czarnecki,* 264 Ill. 305. The opinion in the latter case expressly holds that no person can vote for the election of any officer mentioned in the constitution unless he possesses the qualifications of an elector prescribed in that instrument. This was also the holding in *Plummer* v. *Yost* and *People* v. *English, supra.* If, therefore, the county commissioners of Cook county and the president of the board of county commissioners of Cook county are constitutional officers, those cases would be

decisive of the question as to whether or not women would be entitled, in any event, to vote for such officers.

In section 7 of article 10 of the constitution of 1870 it is provided: "The county affairs of Cook county shall be managed by a board of commissioners of fifteen persons, ten of whom shall be elected from the city of Chicago and five from towns outside of said city, in such manner as may be provided by law." It will thus be seen that the county commissioners of Cook county are officers mentioned and provided for by the constitution, (*People* v. *McCormick,* 261 Ill. 413,)—just as much so as any other officer mentioned and provided for in that instrument,—and it has never been contended, and is not contended by respondents, that women are entitled to vote for constitutional officers. County commissioners and president of the board of county commissioners of Cook county are not among those officers specifically named for which women are allowed to vote by the act of June 26, 1913, and under the holdings of this court it would make no difference if such officers were mentioned in that act if they are officers created by the constitution. Respondents have cited no authority in support of their position that women are entitled to vote for these officers, except *People* v. *English* and *Scown* v. *Czarnecki, supra,* and these cases are against the contentions of the respondents.

Respondents contend that section 7 of article 10 of the constitution set out above, providing that said county commissioners shall be selected "in such manner as may be provided by law," gives the legislature the right to provide by law for the election of these commissioners by any class of voters which they may see fit; that the legislature having provided by the act approved June 5, 1913, (Hurd's Stat. chap. 34, sec. 60,) that the aforesaid county commissioners shall be elected by the legal voters of Cook county, and having by the so-called Woman's Suffrage act provided that women are legal voters for certain officers therein

named, all of which are officers created by the legislature as distinguished from those created by the constitution, therefore women are legal voters within the meaning of those words and qualified to vote for the candidates for county commissioners. In *People* v. *English, supra,* the force and effect of the provision contained in section 5 of article 8 of the constitution as to filling the office of county superintendent of schools, that "the time and manner of election shall be prescribed by law," were fully discussed, and it was there said: "In section 7 of article 10 it is provided 'the county affairs of Cook county shall be managed by a board of commissioners of fifteen persons, ten of whom shall be elected from the city of Chicago and five from towns outside of that city, in such manner as may be provided by law.' It will hardly be contended that by virtue of the words 'in such manner as may be provided by law,' it would be competent for the legislature to enact that at elections in Cook county for members of the board of county commissioners either all women of the age of twenty-one years or all aliens who have declared their intention to become citizens of the United States may vote. * * * We think that the word 'manner,' found in section 5 of article 8 of the constitution, should receive like interpretation with that placed upon the same word found in articles 5 and 10 of the same instrument, and that said word in article 5 indicates merely that the legislature may provide by law the usual, ordinary or necessary details required for the holding of the election." .

It is further contended by respondents that the officer known as president of the board of county commissioners of Cook county is not mentioned in the constitution; that his office is created by the legislature, and being a legislative office the legislature may prescribe the qualifications of voters for such office, as held in *Scown* v. *Czarnecki, supra.* While it is true that the president of the board is not mentioned in the constitution, still such president must be one

of the commissioners to be elected. Section 61 of chapter 34 of Hurd's Statutes of 1913 provides for the election of the president of the county board, as follows: "Every legal voter in said county may vote for and designate (upon his ballot cast for county commissioners) one of the candidates for commissioner to be president of the county board, and the person who shall receive the highest number of such votes shall be declared elected president of said board." It will thus be seen that whoever is elected president of the county board must also be elected a commissioner, and no one can be elected to the office of president of the board without at the same time being elected a commissioner. In voting for candidates for this office the electors elect commissioners, and, incidentally, they vote for one of those commissioners as president, and the one that receives the highest number of votes as president, in addition to being elected a commissioner, is also elected president of the board. This being true, only those electors who are qualified to vote for commissioners are qualified to vote for one of said commissioners as president of the board.

Holding, as we must, that the county commissioners of Cook county are officers provided for by the constitution, under all the decisions of this court and all the authorities that we are able to find on the subject only those who possess the qualifications of electors as provided in the constitution can vote for such commissioners and for one of their number to be president of the county board.

For the reasons given, the demurrer to the petition will be overruled and the writ of *mandamus* awarded as prayed in the petition.                *Writ awarded.*