DEAN FRANKLIN, Appellant, *vs.* JOSIE WESTFALL, Appellee.

*Opinion filed April 20, 1916—Rehearing denied June 16, 1916.*

1. ELECTIONS—*judge of a city court is a city officer.* A judge of a city court is an officer of the city as distinguished from a State or county officer, as only the qualified electors· of the city may vote at an election for that office.

2. SAME—*women are not entitled to vote for judge of a city court.* In view of the fact that article 6 of the constitution indicates that the office of a judge of a city court must, when such court is created, be filled by an election, women cannot be authorized by the legislature to vote for a city judge. (*People* v. *Olson,* 245 Ill. 288, distinguished.)

3. SAME—*question of eligibility to. hold office must be tested by quo warranto.* The question of eligibility to hold office should be raised by an information in the nature of *quo warranto* and can not properly be raised in a proceeding to contest an election.

4. CONSTITUTIONAL LAW—*power of legislature to provide for filling office.* The general rule that where an officer is not provided for by the constitution the legislature may provide for filling the .office either by appointment or election, is qualified by the further provision that the constitution does not specifically indicate the manner in which the office is to be filled.

5. JURISDICTION—*the circuit court has jurisdiction to hear a proceeding to contest election of a city judge.* The circuit court has jurisdiction to hear and determine a proceeding to contest the election of a judge of a city court.

CARTWRIGHT, CARTER and DUNN, JJ., dissenting.

APPEAL from the Circuit Court of McDonough county; the Hon. GEORGE W. THOMPSON, Judge, presiding.

CURRAN & CURRAN, and SCOFIELD, HELFRICH & CALIFF, for appellant.

WALLACE A. WALKER, THOMAS Z. CREEL, and JOHN C. LAWYER, for appellee.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

Appellant, Dean Franklin, filed in the circuit court of McDonough county, against appellee, Josie Westfall, and Albert B. Fuhr, a petition to contest the election of said Josie Westfall as judge of the city court of Macomb at an election held in said city June 1, 1914. Fuhr was defaulted and appellee answered the petition. A trial was had upon the issues made by the petition and the answer. The circuit court entered its decree holding that the appellee had been duly elected as judge of said city and dismissed the petition. This appeal was thereafter prosecuted.

The names of the candidates, party titles and votes cast at said election are shown by the following tabulation:

| CANDIDATE | PARTY | MEN | WOMEN | TOTAL |
|---|---|---|---|---|
| Dean Franklin | Progressive | 430 | 147 | 577 |
| Albert B. Fuhr | Democratic | 146 | 41 | 187 |
| Josie Westfall | Republican | 409 | 430 | 839 |

It is clear that if the votes cast by the women at said election are to be held as legal votes appellee was elected as city judge, but, on the other hand, if they are held as illegal votes then appellant was elected by a plurality of twenty-one votes. This case is therefore to be determined upon the proposition whether or not women can legally vote for a candidate for the office of judge of a city court.

Appellee bases her claim that the women's votes were legally cast and counted for her at said election upon what

is known as the Woman's Suffrage act, which in its main provisions was held to be a valid act by this court in the case of *Scown* v. *Czarnecki,* 264 Ill. 305. Section 1 of that act, so far as it is material to the issues in this case, provides "that all women, citizens of the United States, above the age of twenty-one years, having resided  *  *  *  shall be allowed to vote  *  *  *  for all officers of cities, villages and towns (except police magistrates,)" etc. Appellant argues that judges of city courts are not city officers within the meaning of said act; that judges of city courts are constitutional officers, and that it is not within the power of the legislature to confer upon women the right to vote for candidates for the office of city judge.

A judge of a city court is a city officer. This was virtually decided by this court in the case of *People* v. *Olson,* 245 Ill. 288, in this language: "There is no substantial or material difference between the terms 'city court' and 'municipal court,' both of which are courts of the municipality in which they are established." An officer of the court is therefore an officer of the municipality. State officers are officers that may be voted for by all the electors of the State, county officers are those that may be voted for by the electors of the county, only, and city officers are the officers that may be voted for only by the electors of the entire city.

In the case of *People* v. *English,* 139 Ill. 622, this court had under consideration the act of the legislature entitled "An act to entitle women to vote at any election held for the purpose of choosing any officer under the general or special school laws of this State," approved June 19, 1891. It was decided in that case that women were not entitled to vote for a county superintendent of schools because mention is made of said officer in section 5 of article 8 of the constitution in this language: "There may be a county superintendent of schools in each county, whose qualifications, powers, duties, compensation, and time and manner of election, and term of office, shall be prescribed by law." On

page 628 of that opinion the court said: "It is thus perceived that mention is made in the constitution, of the county superintendent of schools, and that it is indicated therein that he or she is to be selected at an 'election.' We may assume that said provisions for such officer, and for his or her election, did not become operative by force of the constitution itself and without aid from an act of the legislature. But the legislature having in 1872, under and in furtherance of this constitutional provision, enacted a statute which provided for such an officer as a county superintendent of schools in each and every county of the State, it must be regarded that such county superintendent is to all intents and purposes a constitutional officer. The constitution having thus made provision for such officer and for his or her 'election,' and having prescribed, in section 1 of article 7, the qualifications essential to entitle a person to vote at 'any election,' it must be presumed that it was and is the true intent and meaning of that instrument that no person should have the right to vote for a county superintendent of schools who does not possess such qualifications." It was in that case recognized that the office of county superintendent of schools was not, in fact, provided for by the constitution, but that, inasmuch as the constitution mentioned his name and indicated he was to be selected at an election, he was, at least for the purposes of his election, to be regarded as a constitutional officer, and being such an officer for such purpose, by the express provisions of said section 1 of article 7 of the constitution, only males could vote for such officer. This court laid down the rule in that case that women could not be empowered by the legislature to vote for any officer named in the constitution, and in which it is indicated that he is to be selected at an election, unless there is to be also found in the constitution some provision that indicates an intention otherwise. The rule laid down in that case has been followed by this court in every case since decided wherein that question was in-

volved. *Plummer* v. *Yost,* 144 Ill. 68; *People* v. *Czarnecki,* 265 id. 489; *Scown* v. *Czarnecki, supra.*

Section 1 of article 6 of the constitution provides as follows: "The judicial powers, except as in this article is otherwise provided, shall be vested in one supreme court, circuit courts, county courts, justices of the peace, police magistrates, and such courts as may be created by law in and for cities and incorporated towns." Section 17 of said article provides: "No person shall be eligible to the office of judge of the circuit or any inferior court, or to membership in the 'board of county commissioners,' * * * nor unless he shall have resided in this State five years next preceding his election, and be a resident of the circuit, county, city, cities or incorporated town in which he shall be elected." The last two sentences of section 32 of said article 6 provide: "All officers, where not otherwise provided for in this article, shall perform such duties and receive such compensation as is or may be provided by law. Vacancies in such elective offices shall be filled by election; but where the unexpired term does not exceed one year, the vacancy shall be filled by appointment, as follows: Of judges, by the Governor; of clerks of courts, by the court to which the office appertains, or by the judge or judges thereof; and of all such other offices, by the board of supervisors or board of county commissioners in the county where the vacancy occurs."

Article 6, aforesaid, of the constitution covers the whole judicial power of the people of the State and is the source of all legislative authority respecting courts. (*People* v. *Olson, supra.*) Therefore the legislature of this State can create no court, and cannot fix the term of office of a judge of any court, nor prescribe the manner of selection or election of any such judge, unless authorized by said article 6. If the constitution clearly indicates that a judge is to be selected at an election the legislature cannot empower women to vote for such a judge. The instant case is therefore

clearly controlled by the rule laid down in the case of *People* v. *English, supra.* Section 17 of said article, as above quoted, expressly names judges of inferior courts,—that is, judges of city courts and of incorporated towns,—and expressly provides that no such judge is eligible to such an office unless he has resided five years in the State next preceding his election and is also a resident of the city or incorporated town "in which he shall be elected." The whole article indicates clearly that all judges except as is therein otherwise specifically provided are to be elected, justices of the peace of Chicago and appellate judges being the expressed exceptions. We hold, therefore, that women cannot legally vote for a city judge and that only the votes cast by men at said election can be legally counted.

Our attention is called to the fact that this court in the case of *People* v. *Olson, supra,* held that the constitution does not provide for city courts but simply provides for their creation by the legislature, and that the well known rule is, that where an office is created by legislative action it is wholly within the control of the legislature creating it, and that the legislature is competent to declare the manner of filling it, and to change, from time to time, the mode of election or appointment. This court was there announcing the general rule and it is there stated correctly. This court did not there hold that the legislature had the power to make the office of city judge appointive or that women could be empowered by it to vote for a city judge. Those questions were neither up for decision in that case nor decided. It was decided that city judges were not provided for by the constitution, and that, therefore, their terms of office were not fixed by section 32 of said article 6 and that the legislature had power to fix their terms of office. The *Olson case* is in no way overruled by this opinion. It must be understood, however, that the general rule that where an officer is not provided for by the constitution the legislature may provide either for his appointment or election, is qualified by

the further provision that the constitution does not specifically indicate the manner in which he is to be selected. It is not necessary for an officer to be a constitutional officer or one provided for by the constitution, to be classed with constitutional officers for the purposes of election. It is sufficient if the constitution names such an officer and clearly indicates that he is to be elected, although it empowers the legislature to create the office, fix the term and salary and to enumerate his duties as such officer. In other words, the constitution controls whenever and in whatever particular it expressly places a limitation on the legislature. This is so because it is the instrument adopted by the express consent and votes of the people of the State and stands as a positive limitation upon the legislature to make any law contrary to its provisions, and no judge can honorably hold a statute a valid law when he reaches an honest conclusion that it is positively against the express provisions of the constitution. Every member of the legislature, every judge of a court in this State and every man elected Governor of this State is positively required to take an oath to support the constitution before he can qualify for his office.

The objection of appellee that the circuit court had no jurisdiction to hear and determine this case is not tenable. *Misch* v. *Russell*, 136 Ill. 22; *Baker* v. *Shinkle*, 249 id. 154.

The further contention of appellee that the appellant is not eligible to hold the office is not sustained by the proof. Moreover, the question is not one properly raised in an election contest. That question is a proper subject of inquiry by *quo warranto*. *Edgcomb* v. *Wylie*, 248 Ill. 602; *Dilcher* v. *Schorik*, 207 id. 528.

The decree of the circuit court is reversed and the cause is remanded, with directions to enter a decree finding that appellant was duly elected to the office of judge of the city court of Macomb.

*Reversed and remanded, with directions.*

CARTWRIGHT, CARTER and DUNN, JJ., dissenting:

The opinion adopted by the majority is, in our judgment, not only not based upon correct rules of construction, but it is directly and irreconcilably contrary to several decisions of this court construing provisions of the present constitution and like provisions of the constitution of 1848, which is not a mere matter of judgment but of actual demonstration.

Section 1 of article 5 of the constitution of 1848 vested the judicial power of the State in one supreme court, circuit courts, county courts and justices of the peace, and provided that inferior local courts of civil and criminal jurisdiction might be established by the General Assembly in the cities of the State. Section 11 provided that no person should be eligible to the office of judge of any court of this State who was not a citizen of the United States and who had not resided within the State five years next preceding his election. The General Assembly passed an act to establish the recorder's court of the city of Chicago, and Robert S. Wilson was elected judge of that court. An information in the nature of a *quo warranto* against him was presented on the ground that at the time of his election he had not resided five years in this State. Leave to file the information was not granted and the relator sued out a writ of error from this court. This court affirmed the judgment, and said that upon every recognized principle of construction the term "judges" could not include any except such as were made judges or recognized as such by the constitution; that when the constitution was formed no such court as a recorder's court was in existence and for anything that was then known might never have been established, and that when the subject matter of legislation was so apparent no rule of construction would allow a court to presume that something else was intended, and thus deprive the legislature, by implication, of power to legislate upon a given subject. (*People* v. *Wilson,* 15 Ill. 388.) The word

"city," in section 17 of article 6 of the present constitution, quoted in the opinion of the majority, has not the slightest significance as modifying or affecting the decision referred to, because for some reason eligibility to membership in the board of county commissioners was included, and the reference was to the board of commissioners of Cook county, ten of whom must be elected from the city of Chicago. Section 32 of article 6 of the present constitution is the one that relates to the officers provided for in that article covering the judicial system, and the provision is, that all officers provided for in the article shall reside in the division, circuit, county or district for which they may be elected or appointed. The reasoning of the court in the *Wilson case* applies exactly to this case.

In 1869 another act was passed by the General Assembly creating the common pleas court of Sparta, and William P. Murphy was elected judge. Afterward the General Assembly repealed the act creating the court. In a suit instituted by Murphy this court said: "It is entirely clear that there was nothing in the constitution of 1848 which would prevent the legislature from depriving relator of his office by a repeal of the act creating it. No such court as the common pleas court of Sparta, nor such officer as the judge thereof, is mentioned in the constitution. They are both mere creatures of the legislature under the proviso to section 1, article 5, authorizing that body to establish inferior local courts of civil and criminal jurisdiction in the cities of this State. It is a general rule that where an office is created by statute it is wholly within the control of the legislature creating it. The length of term and mode of appointment may be altered at pleasure, and the office may be abolished and the compensation taken away from the incumbent unless forbidden by the constitution,"—citing many authorities. (*People* v. *Lippincott,* 67 Ill. 333.) There is no difference whatever between the provisions of the constitution of 1848 and the present constitution con-

cerning the power of the General Assembly to establish courts in the cities of the State.

Section 32 of article 6 of the present constitution provides that the terms of office of all officers provided for in that article, where not otherwise prescribed in the article, shall be four years. The General Assembly created the municipal court of Chicago, and provided that the first election should be for terms of two, four and six years. Frank P. Sadler was elected for a term of two years, and in an original proceeding in this court for *mandamus* alleged that section 32 fixed his term of office at four years and that the act in question providing for a term of two years was in conflict with the constitution. It was held that article 6 covers the whole judicial power of the people of the State and is the source of all legislative authority respecting courts and that the municipal court was created under section 1 of that article, but it was held that judges of the municipal court were not officers provided for in that article and that it was within the power of the legislature to fix the term of office. The court said that it was a well known rule that where an office is created by legislative action it is wholly within the control of the legislature creating it. The decisions relating to the acts creating the recorder's court of Chicago and the common pleas court of Sparta were stated and indorsed, but the court said that if there were no guides in judicial decisions under the constitution of 1848, or legislative construction acquiesced in for a long period of time, the court would have reached the same conclusion from a consideration of the language of the constitution. The conclusion of the court was stated as follows: "We do not see how it can be said that courts are in any proper sense provided for by the constitution when such courts may never be created but it is entirely optional with the legislature whether they or their officers shall ever have any existence. So far as providing for them is concerned, the most that can be said is that pro-

vision is made for their creation by the legislature, and if created they are of legislative origin. The only relation of section 1 to the subject is that it confers authority to create such courts,· without which the legislature would be powerless to create them, since the enumeration of courts in article 6 is a limitation on the power of the legislature. The legislature may fill the place provided in the judicial system with city courts, but whether it shall be done or not is left entirely to legislative discretion." *People* v. *Olson,* 245 Ill. 288.

In those cases it was decided that the city courts the General Assembly was authorized to create, and the judges of such courts, were neither courts nor officers of constitutional origin, and they cannot be otherwise interpreted.

In our opinion the decision in *People* v. *English,* 139 Ill. 622, furnishes no warrant for the conclusion reached in this case. Section 5 of article 8 of the constitution provides: "There may be a county superintendent of schools in each county, whose qualifications, powers, duties, compensation, and time and manner of election, and term of office, shall be prescribed by law." That officer and his election were provided for in the constitution, and while those provisions did not become operative without an act of the General Assembly, an act was passed in furtherance of the constitutional provision which provided for the election of such officer. It was held that the office was one of constitutional origin, and the word "manner" indicated merely that the legislature might provide, by law, the usual, ordinary or necessary details required for holding his election, and that the county superintendents of schools were made component parts of the system of free schools for which the General Assembly was required to provide. In the case of *Plummer* v. *Yost,* 144 Ill. 68, the decision in *People* v. *English* was stated and quoted from and the clear distinction between the provision relating to the election of a county superintendent of schools and the election

of school officers not mentioned in the constitution was pointed out, and it was held that as to officers not named in the constitution there was no requirement or restriction upon the General Assembly, which had complete control of the subject. The decisions respecting the legislative power to provide for the election of officers not mentioned in the constitution, by persons having different qualifications from those prescribed by the constitution, were again reviewed in *Scown* v. *Czarnecki*, 264 Ill. 305, and it was again decided that as to officers not of constitutional origin the qualifications of electors are wholly within the control of the General Assembly.

The opinion of the majority in this case is contrary to authority and impairs the stability in the law and decisions of the court, which the people, and the General Assembly in the enactment of laws, have a right to rely upon.